Lawrence A. SMITH, Plaintiff-Appellant,†

v.

DODGEVILLE MUTUAL INSURANCE COMPANY, Keith
Kautzer, C & J Insurance Agency, Inc., and Utica
Mutual Insurance Company, Defendants-
Respondents.

Court of Appeals

*No. 96–3352. Submitted on briefs April 2, 1997.—Decided
June 26, 1997.*

(Also reported in 568 N.W.2d 31.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lan Waddell* and *Julianne Platz Hand* of *Waddell & Hand* of Columbus.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John C. Mitby*, *Arthur E. Kurtz* and *Paul Voelker* of *Axley Brynelson* of Madison.

· Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Lawrence A. Smith appeals from a summary judgment which dismissed his negligence action against his insurance agent for failure to procure requested insurance coverage. He claims the circuit court erred when it concluded that preprinted form endorsements used by the insurer, Dodgeville Mutual Insurance Company, failed to satisfy the requirements of § 631.11(1)(a),[1] STATS., 1991–92, for avoiding the insurer's obligation to pay on a claim because of the insured's misrepresentations in the insurance application. Smith contends the court's conclusion that he could not prove he lacked coverage was erroneous. However, because we also conclude that preprinted form endorsements do not comport with the statutory requirements for avoiding liability for payment under the policy Smith purchased, the coverage

---

[1] This provision was renumbered and amended by 1995 Wis. Act 259, § 2, eff. May 7, 1996.

Smith requested was available. Therefore, Smith cannot prove the agent breached a duty owed to Smith, an essential element of his negligence claim. Accordingly, we affirm the summary judgment of dismissal.

## BACKGROUND

In 1992, Lawrence Smith purchased farm insurance from Dodgeville through a local insurance agent, Keith Kautzer. Smith relied on Kautzer to complete the insurance application for him, although he signed it himself. According to Smith, Kautzer failed to ask, and therefore the application form failed to disclose, that Smith had had insurance cancelled in the past. Dodgeville issued a policy which included fire and wind coverage for the buildings and equipment on Smith's farm. The policy incorporated preprinted form endorsements[2] that stated the contract would be void in the event that Dodgeville relied on any material misrepresentations made in the application. Smith's application itself was not attached to the policy.

In 1994, when the Dodgeville policy was in effect, a fire at the Smith farm destroyed a machinery storage shed which contained tractors and other equipment, causing an estimated $370,000 in damages. The face amount of the policy was sufficient to cover the loss.

---

[2] The form endorsement states:

The Misrepresentation, Concealment or Fraud Condition 6 is replaced by the following:

6. Misrepresentation, Concealment or Fraud

No misrepresentation or breach of affirmative warranty made by an insured or in behalf of an insured in negotiation of this policy will void this policy unless:

a. we rely on it and it is either material or made with intent to deceive; or

b. the facts misrepresented or falsely warranted contribute to the loss.

However, while investigating the claim, Dodgeville discovered the inaccuracy in Smith's application regarding past coverage. Referencing the preprinted form endorsements of the policy, Dodgeville denied coverage on the ground that the application contained a material misrepresentation on which it had relied.

Smith sued Dodgeville to collect on the policy and he sued Kautzer for failure to procure the insurance coverage he had requested. Smith settled with Dodgeville for $100,000, and dismissed it from the suit. Thereafter, Kautzer, his employer, and his errors and omissions carrier moved for summary judgment. The circuit court dismissed Smith's negligence claim against Kautzer when it concluded that Dodgeville could not deny coverage based on Smith's misrepresentation in the application, because Dodgeville had not complied with the requirements of § 631.11(1)(a), STATS., 1991–92. Therefore, Smith could not prove that Kautzer failed to provide the insurance coverage Smith requested, despite the fact that Smith had settled for substantially less than the stated policy limits. Smith appeals the summary judgment of dismissal.

## DISCUSSION

**Standard of Review.**

■

This court reviews summary judgment decisions *de novo*, applying the same standards employed by the circuit court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994). We first examine the complaint to determine whether it states a claim, and then review the answer, to determine whether it presents a material issue of fact or law. *See id.* If we determine that the complaint and answer are

sufficient, we proceed to examine the moving party's affidavits, to determine whether they establish a *prima facie* case for summary judgment. *Id.* If they do, we look to the opposing party's affidavits, to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.*

Construction of a statute, or its application to undisputed facts, is a question of law, which we decide independently, without deference to the circuit court's determination. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). While the existence of negligence is a mixed question of law and fact which is generally left to the jury, *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660, 665 (1979), when an essential element of the claim cannot be proved, under any view of the evidence, summary judgment is appropriate. *See Nelson v. Davidson,* 155 Wis. 2d 674, 679, 456 N.W.2d 343, 345 (1990).

**Section 631.11(1)(a), STATS., 1991–92.**

Smith does not claim that the type of coverage available under the insurance policy which Kautzer procured for him failed to conform to the coverage which he had requested. Rather, Smith contends that the insurance policy was not binding because of Kautzer's failure to accurately complete the application. Stated another way, because the application contained untrue statements about prior cancellations of insurance for Smith, Dodgeville denied coverage under the policy.

Smith's claim against Kautzer requires us to construe the provisions of § 631.11(1)(a), STATS., 1991–92, which relate to representations made by the insured

during the negotiations for an insurance contract. Section 631.11(1)(a) provided in relevant part:

> No statement, representation or warranty made by any person in the negotiation for an insurance contract affects the insurer's obligations under the policy unless it is stated in the policy, or in a written application signed by such person, a copy of which is made a part of the policy by attachment or endorsement.[3]

The parties agree that Smith's statement that his insurance coverage had never been canceled or a request for coverage denied was not contained in the policy. Nor was Smith's application physically attached to the policy. The parties disagree, however, about whether Smith's application was made a part of the policy by "endorsement," as described in § 631.11(1)(a), STATS., 1991–92. Smith contends that the standard, preprinted endorsement forms used by Dodgeville were sufficient to incorporate any misrepresentation on his application into the policy. Kautzer counters that the statute requires the insured's actual application for the policy be made an endorsement of the policy and that preprinted forms relative to misrepresentations in the

---

[3] As noted above, § 631.11(1)(a), STATS., has since been reworded, but the changes do not affect our analysis. The statute currently states in relevant part:

> No statement, representation or warranty made by a person other than the insurer or an agent of the insurer in the negotiation for an insurance contract affects the insurer's obligations under the policy unless it is stated in any of the following:
> 1. The policy.
> 2. A written application signed by the person, provided that a copy of the written application is made a part of the policy by attachment or endorsement.
> 3. A written communication provided by the insurer to the insured within 60 days after the effective date of the policy.

application process in general are insufficient, as a matter of law.

■

An endorsement, or a rider, as it is sometimes known, is a writing added or attached to a policy of insurance, which expands or restricts the insurance set forth in the body of the policy. 2 COUCH ON INSURANCE 3D § 18:17 (1996). When an endorsement is issued and delivered in compliance with all statutes and applicable regulations, it becomes a part of the contract of insurance. *Id.*; *Timlin v. Equitable Life Assurance Society*, 141 Wis. 276, 285, 124 N.W. 253, 257 (1910). Our inquiry here turns on whether the preprinted form endorsement Dodgeville attached to Smith's policy is sufficient to satisfy § 631.11(1)(a), STATS., 1991–92.

■

When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). In so doing, we begin with the plain meaning of the language used in the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we must apply that language to the facts of the case. However, if the language used in the statute is capable of more than one meaning, we will determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object which the legislature intended to accomplish. *Id.* We will also look to the common sense meaning of a statute to avoid unreasonable and absurd results. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 766, 300 N.W.2d 63, 71 (1981) (citation omitted). Here, we conclude the statute is clear and unambiguous.

235

■ What constitutes making a written application a part of the insurance contract between the insured and the insurer by "endorsement," as provided for in § 631.11(1)(a), STATS., 1991–92, has not been determined in a published appellate decision. Although it is not uncommon for some of the provisions of an insurance policy to be contained in the endorsements that follow the main body of a policy, § 631.11(1)(a) limits when misrepresentations of the insured made in the negotiation of the policy may become part of the policy through such an endorsement. It provides that no statement made in the negotiation of an insurance contract will limit the insurer's liability to pay under the policy, unless the insurer follows the method provided by statute for making those statements a part of the contract. In so doing, it proscribes, to some degree, what shall constitute the contract between the insured and insurer, and it eliminates defenses to payment that may be otherwise available to the insurer, in order to protect the insured. Therefore, we conclude the statute is remedial; enacted for the benefit of the insured, and it should be liberally construed to effect that intent.[4]

■ The statute's use of the word "endorsement" must also be construed in context. It is not used alone, but as part of a more complete directive: "a copy of which is made part of the policy by attachment or endorsement." Section 631.11(1)(a), STATS., 1991–92. Taken in

---

[4] Other states which have similar statutes have concluded that the purpose of such laws is to protect the insured. *See Southland Life Ins. Co. v. Donati,* 114 S.E.2d 595 (Va. 1960); *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 363 (7th Cir. 1987).

context, the endorsement method of incorporation of the insured's representations into the contract clearly and unambiguously evinces the legislative intent to compel an incorporation of the actual statements made by the applicant who has become an insured under the policy at issue. General, preprinted form statements are insufficient to protect the insured, as they would not give adequate notice to the insured about the complete and specific terms of the actual policy he/she has purchased. *See Inter-Insurance Exchange of Chicago Motor Club v. Milwaukee Mutual Ins. Co.,* 378 N.E.2d 391, 394 (Ill. App. Ct. 1978). Our interpretation in this regard is supported by § 631.13, STATS.,[5] which states in relevant part:

> No insurance contract may contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery . . . .[6]

Therefore, we conclude that in order to make a written application form a part of an insurance policy by "endorsement," the insurer must specifically write across the application, itself, that it is an endorsement and part of the policy. Care should be used that the provisions of § 631.13, STATS., are followed as well. Otherwise, inaccuracies in the application will not be a defense to payment on the policy.

---

[5] This section remains in the same form as it had in 1992.

[6] There are several statutory exceptions that are not relevant to our decision.

## Negligence of the Insurance Agent.

■

Wisconsin law allows an insured whose claim is denied by his insurer to bring a tort action against his insurance agent for failing to procure the proper coverage. *Appleton Chinese Food Service, Inc. v. Murken Ins., Inc.*, 185 Wis. 2d 791, 804, 519 N.W.2d 674, 678 (Ct. App. 1994). The tort is based on an agent's duty to "use reasonable skill and diligence to put into effect the insurance coverage requested by his or her policy holder . . . ." *Id.* at 803 n.4, 519 N.W.2d at 677. The agent has fulfilled his duty if he procures "a binding contract of insurance that conforms to the agreement between the agent and the insured." *Id.* at 804, 519 N.W.2d at 678, *citing* 4 COUCH ON INSURANCE 2D § 26A:289 (1984).

■

In order to prevail on his negligence claim, Smith must show facts which could prove all of the following: "1) a duty on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury." *Nelson*, 155 Wis. 2d at 679, 456 N.W.2d at 345. However, because Dodgeville's insurance policy did not endorse Smith's application in a manner sufficient to comply with § 631.11(1)(a), STATS., 1991–92, Smith had the coverage he asked Kautzer to provide. Therefore, Kautzer breached no duty to Smith, under any view of the facts.

■

Smith complains that the defendants are relying on a contract to defend a tort action. But this contention loses sight of the nature of Smith's tort action against Kautzer, because Smith, himself, must prove

the absence of an insurance contract enforceable against Dodgeville in order to prevail on his claim against Kautzer. *See Appleton Chinese Food,* 185 Wis. 2d at 804, 519 N.W.2d at 678. Because we conclude that Kautzer breached no duty owed to Smith, the complaint was properly dismissed.

## CONCLUSION

Kautzer did procure the insurance coverage Smith requested. The defense Dodgeville raised to coverage was barred by the provisions of § 631.11(1)(a), STATS., 1991–92. Therefore, the policy was binding, as a matter of law, and no duty was breached. Summary judgment was properly granted. We affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.