Jane BARRY, Plaintiff-Appellant,†

v.

MAPLE BLUFF COUNTRY CLUB, INC., Defendant-
Respondent.

Court of Appeals

*No. 00–1178. Submitted on briefs November 7, 2000.—Decided
April 5, 2001.*

## 2001 WI App 108

(Also reported in 629 N.W.2d 24.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Aaron N. Halstead* of *Shneidman, Myers, Dowling, Blumenfield, Hawks & Domer* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael G. Laskis* and *Emily R. Gnam* of *Foley & Lardner* of Madison.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Jane Barry appeals a judgment dismissing her complaint alleging sexual discrimination by Maple Bluff Country Club. Because we conclude that the Club is a private, nonprofit organization that satisfies the requisite criteria of ch. 106 to fall outside the scope of Wisconsin's public accommodation law, we affirm the judgment of the circuit court.

## BACKGROUND[1]

¶ 2. Maple Bluff Country Club is a nonprofit organization that provides its members and guests with a clubhouse, pool, tennis courts, golf course, and other recreational facilities. It does so on land that it leases from the Village of Maple Bluff. According to the terms of the lease, the Village retains certain rights of use during limited times which the Club establishes. The Club also makes specified cash payments to the Village and must pay taxes, insurance, upkeep and any other expense relating to maintaining its facilities on the Village's property.

---

[1] The facts referenced in this opinion were provided by stipulation submitted to the circuit court.

¶ 3. Barry is a member of the Club and a resident of the Village. She has alleged that the Club engaged in sex discrimination by providing more advantageous services and opportunities to men than to women club members. Her amended complaint made a number of legal contentions, all of which we dismissed in an earlier decision, *Barry v. Maple Bluff Country Club*, 221 Wis. 2d 707, 586 N.W.2d 182 (Ct. App. 1998) (hereinafter, *Barry I*), except her claim for unlawful discrimination under Wisconsin's public accommodation law, WIS. STAT. § 106.04(9)(a)2. (1997–98).[2] We allowed that claim to proceed because the record presented during the first appeal was insufficient to determine whether the Club was a public or a private organization operated in a manner consistent with the statutory proviso.[3] *Barry I* at 722–26, 586 N.W.2d at 188–89.

¶ 4. On remand, a further record was developed. The circuit court thoroughly analyzed WIS. STAT. § 106.04(1m)(p),[4] which defines "public place of accommodation or amusement" broadly and then establishes additional criteria, which, if met, limit the statute's application. The circuit court concluded that the Club had met its burden of proving that it fell within the

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. WIS. STAT. § 106.04(9)(a)2. has been renumbered by 1999 Act 82 §§ 38 to 92. Now § 106.52(3)(a)2. (1999–2000).

[3] We determined that the section of the statute that the Club seeks to use as a legal basis for dismissing Barry's lawsuit is a proviso on which the Club bears the burden of proof. *Barry v. Maple Bluff Country Club*, 221 Wis. 2d 707, 723, 586 N.W.2d 182, 188 (Ct. App. 1998).

[4] Renumbered by 1999 Act 82 §§ 38 to 92. Now WIS. STAT. § 106.52(1)(e) (1999–2000).

proviso of § 106.04(1m)(p)2. and therefore, was not subject to the proscriptions contained in § 106.04(9)(a)2. Barry appeals.

## DISCUSSION

### Standard of Review.

¶ 5. This court applies the same summary judgment methodology as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 233, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 6. Both parties moved for summary judgment. The facts material to each party's motion are not disputed; only the application of those facts to the various factors necessary to establish whether the Club falls within the ambit of Wisconsin's public accommodation law is contested. Therefore, the question before us is one of statutory interpretation, or the application of a statute to undisputed facts, which we decide *de novo*. *Id.* at 233, 568 N.W.2d at 34.

## Statutory Interpretation.

¶ 7. Barry claims that the Club's activities are prohibited by WIS. STAT. § 106.04(9)(a)2., which states that no person may:

> Give preferential treatment to some classes of persons in providing services or facilities in any public place of accommodation or amusement because of sex, race, color, creed, sexual orientation, national origin or ancestry.

The parties agree that the Club must be a public place of accommodation or amusement for Barry's claim of discrimination to lie under § 106.04(9)(a)2. Section 106.04(1m)(p) defines "public place of accommodation or amusement." It states in relevant part:

> 1. "Public place of accommodation or amuse-ment" shall be interpreted broadly to include, but not be limited to . . . any place where accommoda-tions, amusement, goods or services are available either free or for a consideration, subject to subd. 2.
> 2. "Public place of accommodation or amuse-ment" does not include a place where a bona fide private, non-profit organization or institution pro-vides accommodations, amusement, goods or services during an event in which the organization . . . provides the accommodations, amusement, goods or services to the following individuals only:
> a. Members of the organization or institution.
> b. Guests named by members of the organiza-tion or institution.
> c. Guests named by the organization or institution.

¶ 8. Rather than addressing the merits of Barry's claim of discrimination under WIS. STAT. § 106.04(9)(a)2., the proceedings in the circuit court

focused on whether the Club was a *bona fide* private organization that provided goods or services only to the three classes of individuals described in § 106.04(1m)(p)2. The circuit court dismissed Barry's complaint because it concluded that the Club was a private organization that operated within the confines of § 106.04(1m)(p)2.

¶ 9. No published Wisconsin appellate case has addressed the definition of "public place of accommodation or amusement" as applied to an operating country club. We conclude a two-fold analysis is appropriate: First, we must determine whether the Club is a private organization,[5] and second, we must determine whether it provides accommodations, amusement, goods or services only to those classes of individuals described in WIS. STAT. § 106.04(1m)(p)2.a.–c.

### *1. Private organization.*

¶ 10. Although Wisconsin appellate courts have not examined the term "private" in light of WIS. STAT. § 106.04(1m)(p), federal cases have construed the federal public accommodation law, which also has status as a "private" club as one criterion necessary to avoid the effect of the law. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969); *Equal Employment Opportunity Comm'n v. Chicago Club*, 86 F.3d 1423 (7th Cir. 1996); *Welsh v. Boy Scouts of America*, 993 F.2d 1267 (7th Cir. 1993); *United States v. Lansdowne Swim Club*, 713 F. Supp. 785 (E.D. Pa. 1989). The usual analysis focuses on the eight factors drawn together in *Lansdowne Swim Club*: (1) the genuine selectivity of members for the organization; (2) the organization's control over its operations; (3) the history of the organi-

---

[5] It is not disputed that the Club is a nonprofit organization.

zation; (4) the use of the organization's facilities by nonmembers; (5) the organization's purpose; (6) whether the organization advertises for members; (7) whether the organization maintains a nonprofit status; and (8) the formalities observed by the organization. *Lansdowne Swim Club*, 713 F. Supp. at 796–97; *Welsh*, 993 F.2d at 1276. In reviewing the eight factors listed, courts have placed the greatest weight on the first factor, whether membership in the organization is truly selective. *Welsh*, 993 F.2d at 1276 (citing *Tillman v. Wheaton-Haven Rec. Ass'n*, 410 U.S. 431 (1973)). Federal courts have concluded that a truly selective membership requires a "plan or purpose of exclusiveness." *Sullivan*, 396 U.S. at 236.

¶ 11. As we apply Wisconsin's public accommodation law to the facts stipulated to by the parties, we do so in a manner consistent with the purpose of the legislation. *J.L.W. v. Waukesha County*, 143 Wis. 2d 126, 130, 420 N.W.2d 398, 400 (Ct. App. 1988). The legislative purpose underlying WIS. STAT. § 106.04(1m)(p)1. is to broadly define those organizations subject to the law but, under subp. 2., to remove certain organizations from the scope of the statute if they are *bona fide* nonprofit, private organizations providing accommodations, amusement, goods or services to certain classes of recipients. *Barry I*, 221 Wis. 2d at 722–23, 586 N.W.2d at 188. In interpreting the term "private" consistent with that statutory purpose, we conclude the criteria established under federal law are of assistance to our analysis, as is the circuit court's well-reasoned decision.

¶ 12. The stipulation of facts shows the Club has a plan that is consistently employed in determining who will obtain membership. First, a prospective mem-

ber must be proposed and seconded by two members who must vouch for the nominee's moral and financial character. If the prospective member is not a village resident, two letters must be sent to the membership committee supporting the nomination. If the nominee resides in the Village, the Club requires one letter. Second, the membership committee interviews all nominees and makes recommendations to the Club's board of directors. Third, no one may be admitted to membership except through the unanimous vote of the board. The only restriction on the board's decision-making process is that no nominee may be rejected on the basis of race, creed, sex or national origin.

¶ 13. The stipulation of facts also shows that the Club meets other criteria for a private club. For example, the membership owns the Club's property and, through its board which is elected by the membership, it decides what programs and facilities will be provided and the hours of use. The board's control of the Club's facilities is an important factor. *Chicago Club*, 86 F.3d at 1435–36. In regard to residents of the Village who may make limited use of certain club facilities according to the terms of the lease, the lease was entered into by the board, and the times for such use are set by the Club and described in its various publications. Furthermore, the history of the Club shows its purpose has always been that of a private country club established to provide social and recreational services and facilities to its members and guests.

¶ 14. We are not persuaded by Barry's argument that the lease's requirement that village residents receive a letter inviting them to apply for membership and that a majority of the board must be residents in the Village causes the Club to be a public organization. As we stated earlier, village residents are not guaran-

teed membership and can be rejected simply by failing to receive a unanimous vote from the board. Additionally, Barry has cited no authority that would prohibit a private club from having as one criterion for membership, or a director's position, residence in a particular geographic location for a percentage of its members or directors, and we have found none. Accordingly, we conclude that the Club is a private organization within the meaning of Wisconsin's public accommodation law.

¶ 15. Barry focuses her arguments most heavily on the provisions of the lease that permit nonmember residents of the Village to use club facilities at prescribed times. We conclude that these provisions are insufficient to overcome the other criteria which clearly show the intent and plan utilized to maintain a truly selective membership and operation of the Club as a private organization. However, that argument does require further examination as we determine whether the Club's activities come within the proviso of WIS. STAT. § 106.04(1m)(p)2.a.–c.

## 2. *Recipients of goods or services.*

¶ 16. All of the provisions Barry relies on come from the lease between the Club and the Village. The lease evidences a series of business transactions between the Club and the Village where payments by the Club for use of the land are made in cash and in kind.[6] The use that nonmember residents make of the facility is limited to: use of the tennis courts for three hours per week between June 7 and Labor Day; use of the swimming pool three daytime hours and three evening hours per week, but no guests are permitted; use

---

[6] The lease specifically states that it has no third-party beneficiaries.

of the golf course three times per year upon payment of green fees and at hours of play specified by the Club; children's participation in swim team, tennis team and golf lessons upon payment of any required fee; and use of the Grill Room Sunday afternoon and evening from November through March if it is open.[7] The Club monitors this use through provision of a "resident privilege card."

¶ 17. For these activities to be permissible under WIS. STAT. § 106.04(1m)(p)2.a.–c., the nonmember residents must be "guests named by members" of the Club or "guests named by" the Club. We conclude they are guests named by the Club. While it is true, as Barry contends, that each nonmember village resident is not described by name, each does receive an individual resident privilege card. Additionally, the statute does not require that each guest be individually named. The bylaws, rules of the Club and resident privilege card identify those guests with sufficient specificity to monitor their use and exclude the general public while honoring the payments in kind for which the Club is obligated under the lease.

¶ 18. Accordingly, we conclude that the Club is not an organization within the scope of Wisconsin's public accommodation law because it is a *bona fide* private, nonprofit organization which provides accommodations, amusement, goods or services only to its members, guests of its members and guests of the Club. Therefore, we affirm the judgment of the circuit court.

---

[7] Currently, the Grill Room is closed on Sundays January through March.

## CONCLUSION

¶ 19. Because we conclude that the Club is a private, nonprofit organization that satisfies the requisite criteria of ch. 106 to fall outside the scope of Wisconsin's public accommodation law, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.