Barbara L. BATT and Donald M. Batt, Sr.,
Plaintiffs-Co-Appellants-Cross-Respondents,

v.

Guineth L. SWEENEY and Allstate Insurance Company, Defendants-Respondents-Cross-Appellants,†

MAYLINE COMPANY, INC., Subrogated Defendant-Appellant,

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Subrogated Defendant.

Court of Appeals

*No. 01–1717. Submitted on briefs March 7, 2002.—Decided April 10, 2002.*

2002 WI App 119

(Also reported in 647 N.W.2d 868.)

† Petition to review denied 7-26-02.

721

On behalf of the subrogated defendant-appellant and plaintiffs-co-appellants—cross-respondents, the cause was submitted on the briefs of *Timothy B. Gifford* of *Olsen, Kloet, Gunderson, & Conway*, Sheboygan, and *William W. Moir III* of *Neumann, Humke, Moir, Mueller & Bohrofen, S.C.*, Sheboygan.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Christine M. Benson* of *Hills Legal Group, Ltd.*, Waukesha.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. This case originated because of an automobile accident involving Barbara L. Batt and Guineth L. Sweeney. Batt, her husband, Donald M. Batt, Sr., and Mayline Company, Inc. (collectively, "the Batts") appeal a summary judgment of the circuit court that granted Sweeney and Allstate Insurance Company's (collectively, "Allstate") motion for summary judgment, but denied a counterclaim alleging that the Batts brought the suit frivolously. The circuit court found that the Batts released Allstate from any further liability as a result of the car accident because they had signed a $7700 check issued to them by Allstate, which stated: "FINAL SETTLEMENT OF ANY AND ALL CLAIMS ARISING FROM BODILY INJURY CAUSED BY ACCIDENT ON 06/18/99." We agree with the circuit court's denial of the claim that the Batts' suit was frivolous. We disagree with the circuit court's finding that there existed no material issues of fact in dispute that would entitle the Batts to a trial. We therefore affirm in part, reverse in part and remand for a trial.

¶ 2. On June 18, 1999, Barbara Batt was driving westbound on Georgia Avenue in the City of Sheboygan when her vehicle was struck by another vehicle driven by Guineth Sweeney. On June 20, 1999, Batt sought medical treatment for injuries she sustained during the accident. Thereafter, she continued to receive medical treatment for maladies related to the accident. On June

24, 1999, Batt was contacted by Sweeney's insurer, Allstate. Batt gave a tape-recorded interview to an Allstate claims representative, answering questions about medical care she had received because of the accident and also about damage sustained by her vehicle. In July 1999, Batt signed forms from Allstate authorizing the release of her medical records.

¶ 3. In November 1999, Batt began communicating with Michael Kahn, an Allstate claims adjuster, regarding payment from Allstate for health care costs and wage losses which were related to the accident. In her affidavit, Batt said she was concerned about her income loss, particularly lost overtime, which had been an important part of her total income. She said she told Kahn that her income had been substantially reduced since the accident due to work restrictions. She said Kahn told her that he would give her $6700 for her claim. When Batt asked Kahn specifically about the medical bills, she said he replied by saying, "The highest we can go is $7,700 plus the medical bills." Batt said she voiced concern about the coverage her health insurance would provide for future medical bills should her back problems continue. Batt said Kahn told her that her health insurance should cover those bills. Batt said she told Kahn that she was still being treated for her back and wanted to know what would happen if she ended up having major problems with her back. Batt maintains that Kahn specifically told her, "We'll cross that bridge when we come to it."

¶ 4. Subsequently, in January 2000, Batt agreed to accept a check from Allstate in the amount of $7700. However, in her summary judgment affidavit, Batt emphasized that she believed the $7700 "represented payment for my wage loss up to that point." Allstate sent the Batts a check in the amount of $7700. On the

face of the check and typed in a space labeled "In Payment Of" was the statement that this was "FINAL SETTLEMENT OF ANY AND ALL CLAIMS ARISING FROM BODILY INJURY CAUSED BY ACCIDENT ON 06/18/99." When Batt received the check, she said the only thing she did was verify that the amount was $7700, but that she "did not read other information on the face of the check but simply signed the check below [her] husband's name." Allstate also sent a letter and a release form. Batt said Kahn did not tell her that he would be sending a release form along with the check and Batt did not sign or return the release to Allstate.

¶ 5. Batt said she had continued to believe that Allstate would cover her accident-related medical expenses until she was contacted by the Sheboygan Clinic several weeks later and informed that Allstate had refused to pay for them. Thereafter, the Batts filed a personal injury action on February 21, 2001. On May 18, 2001, Mayline Company, Barbara Batt's employer, brought a cross-claim against Allstate and a counterclaim against the Batts for subrogation to the extent of the benefits paid as a result of accident-related injuries.

¶ 6. On April 2, 2001, Allstate filed an answer to the Batts' claim asserting the affirmative defense of accord and satisfaction. On April 4, 2001, Allstate filed a motion for summary judgment claiming that when the Batts cashed the $7700 check, this amounted to an accord and satisfaction, settling all claims. Allstate also included a counterclaim asserting that the suit initiated by the Batts constituted a frivolous action pursuant to WIS. STAT. § 802.05 (1999–2000).[1] The court granted Allstate's summary judgment motion, but denied its

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise stated.

claim that the Batts brought the suit frivolously. The Batts appeal and Allstate cross-appeals.

¶ 7. It is well established that we apply the same summary judgment methodology as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. *Id.* at 232–33. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 8. The Batts raised in their pleadings and affidavits the defense that they were induced by Kahn's misrepresentation to sign and cash the check and that they would not have accepted the check absent this misrepresentation. Thus, the Batts' claim is that they were fraudulently induced to enter into the contract of settlement. Allstate raised the affirmative defense of "accord and satisfaction." An "accord and satisfaction" is an agreement to discharge an existing disputed claim; it constitutes a defense to an action to enforce the claim. *Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis. 2d 95, 112, 341 N.W.2d 655 (1984). Like other contracts, an accord and satisfaction requires an offer, an acceptance, and consideration. *Id.*

¶ 9. Allstate argues that the Batts' claim of misrepresentation does not raise issues of material fact or law that preclude summary judgment. This is incorrect. Evidence of any fraud is sufficient to impeach a settlement. *See Grob v. Nelson*, 8 Wis. 2d 8, 13, 98 N.W.2d 457 (1959). The circuit court stopped short in its analysis when it did not take into consideration the Batts' extrinsic evidence before rendering its decision. After examining Allstate's affidavits and determining that they established a prima facie case for summary judgment, the court failed to take the next step; it did not take into account the Batts' affidavits in order to determine whether there existed any material facts in dispute that entitled the Batts to a trial. *See Smith*, 212 Wis. 2d at 232–33. The court erred when it stopped short of reviewing the opposing party's affidavits and stated:

> In determining whether there is accord and satisfaction, the intent of the parties can be gleaned from two things. One, it can be gleaned from the face of the document itself, and if the document is unambiguous, that is the only location that the intent of the parties can be gleaned.
>
> If, in fact, there's ambiguity in the document, then the Court can turn to what the parties have provided to the Court ... that is, extrinsic evidence about the intent of the parties, vis-a-vis these depositions of Mr. Khan and other folks who were apparently involved in the negotiation process.

¶ 10. The court then looked to the check containing Allstate's "final settlement" language to determine whether it was unambiguous. It found the language to be clear. It then took a wrong turn in its analysis:

*There's nothing in the document [check] that sug-*
*gests to me that there was any trickery or anything to*
*mislead anybody as to what it was . . . .* So to come
along now and say, well, it was all a mistake, that's not
what I intended, *flies in the face of what was on the*
*document itself;* and the Court can disregard such
statements because they're completely unnecessary to
ascertain the *intent being clear on the face of the*
*document by the unambiguous statements contained*
*there in.* (Emphasis added.)

¶ 11. In short, the court assumed that fraud has
to be shown on the face of the document itself. It then
concluded: "[T]here is no need to turn to any extrinsic
evidence to ascertain the intent of the parties. The
intent of the parties is specified on the document." The
court determined that the only question remaining was
whether Batt had assented to the intent of the parties
by endorsing the check and receiving the funds. The
court found that she had assented, that she had re-
ceived full settlement of the claim and that Allstate's
defense of accord and satisfaction had been proved.

¶ 12. We do not agree with the court's analysis. As
the Batts correctly point out, even the "parol evidence
rule"—which prohibits the introduction of extrinsic
evidence to contradict the express language of an un-
ambiguous contract—does *not* prevent the introduction
of a claim of misrepresentation. *Caulfield v. Caulfield,*
183 Wis. 2d 83, 92, 515 N.W.2d 278 (Ct. App. 1994). "A
material misrepresentation of fact may render a con-
tract void or voidable." *Bank of Sun Prairie v. Esser,* 155
Wis. 2d 724, 731, 456 N.W.2d 585 (1990). "The parol
evidence rule does not exclude evidence to show mis-
representation as a ground for avoidance of the con-
tract." *Id.*

¶ 13. The elements of fraud are a false representation made with intent to defraud and reliance by the injured party on the misrepresentation. *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131 (Ct. App. 1982). We hold that Barbara Batt's affidavit alleged fraud. In her affidavit, Batt stated that she told Kahn her income had been substantially reduced since the accident because of her injuries and that she was particularly concerned about the loss of overtime, which represented an important part of her income. Batt stated she voiced concern to Kahn about the coverage her health insurance would provide for future medical bills should her back problems continue. Batt said Kahn told her that her health insurance should cover those bills. Batt said she told Kahn that she was still being treated for her back and wanted to know what would happen if she ended up having major problems. Batt maintains that Kahn specifically told her, "We'll cross that bridge when we come to it."

¶ 14. Finally, Batt's affidavit states that she understood her communications with Kahn to mean that when she agreed to accept the $7700 check (and in fact did sign and cash the check) that she had accepted payment for her wage loss up until January and for her personal responsibility for medical expenses related to the accident. Batt stated that when the Sheboygan Clinic contacted her for payment of her medical expenses, she told it that Allstate had agreed to be responsible for those expenses. She was later told that Allstate had refused to pay. In short, Batt's affidavit alleges these elements of fraud: that Kahn made a misrepresentation, one that he did not intend to back, and that she relied upon it when she accepted and

cashed the check. Her affidavit sufficiently presents material issues of fact requiring a trial.

¶ 15. On remand, we encourage the circuit court and the parties to bear in mind that in cases where claims of misrepresentation are made, the facts of the case are particularly important to determine if reliance on the misrepresentation is justifiable. *Bank of Sun Prairie*, 155 Wis. 2d at 732–33. Further, when fraud is pled, the facts of each case that shall be considered must include the intelligence and experience of the misled individual(s) and the relationship between the parties to determine whether the individual(s) acted reasonably when relying on the misrepresentation. *Id.* at 734.

¶ 16. Costs are denied to all parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.