WISCONSIN MALL PROPERTIES, LLC, a Delaware
Limited Liability Company,
Plaintiff-Appellant,†

v.

YOUNKERS, INC., Saks, Inc. and Parisian, Inc.,
Defendants-Respondents,

CITY OF GREEN BAY and City of
Green Bay Redevelopment Authority,
Intervenors-Respondents.

Court of Appeals

*No. 2005AP323. Oral argument September 27, 2005.
—Decided November 1, 2005.*

2005 WI App 261

(Also reported in 707 N.W.2d 886.)

† Petition to review granted 1-20-06.

463

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory B. Conway* and *Tony A. Kordus* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay. There was oral argument by *Gregory B. Conway*.

On behalf of the defendants-respondents, the cause was submitted on the joint brief of *Alan H. Marcuvitz* of *Michael Best & Friedrich, LLP* of Milwaukee, and *Gerald L. Angst* of *Sidley Austin Brown & Wood, LLP* of Chicago, Illinois. There was oral argument by *Alan H. Marcuvitz* and *Gerald L. Angst*.

On behalf of the intervenors-respondents, the cause was submitted on the joint brief of *Allison C. Swanson*, assistant city attorney, of Green Bay, and *Benjamin Southwick* of Richland Center. There was oral argument by *Allison C. Swanson* and *Benjamin Southwick*.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Wisconsin Mall Properties, LLC, (Mall) appeals an order from the circuit court granting summary judgment in favor of Younkers, Inc.,[1] and intervenors the City of Green Bay and the City of Green Bay Redevelopment Authority (collectively the "City"). The Mall argues the circuit court erred by granting summary judgment because (1) an action for breach of contract was not precluded by the condemnation of a lease; and (2) Younkers' obligation to pay costs the Mall

---

[1] Saks, Inc., is the successor to Younkers, Inc.'s interest in the lease through a series of corporate mergers. Younkers and Parisian, Inc. are or were at one time members of the Saks corporate family.

incurred in connection with the condemnation, pursuant to the terms of the lease, was not precluded by the condemnation of the lease. We affirm the judgment.

## BACKGROUND

¶ 2. In 1993, Younkers, Inc., sold to and subsequently leased back from UTFMW Limited Partnership[2] eight department stores, including a store in downtown Green Bay. Younkers entered into a lease agreement on June 23, 1993. Section 5.1(b) of the lease contained a condemnation clause that stated in pertinent part:

> [T]his Lease shall not terminate, nor shall Lessee . . . be entitled to the abatement of any rent or any reduction thereof . . . by reason of any damage to or destruction of . . . the demised premises from whatever cause, [or] the taking of the demised premises . . . by condemnation or otherwise . . . it being the intention of the parties hereto that the rent and all other charges payable hereunder . . . shall continue to be payable in all events and the obligation of the Lessee hereunder shall continue unaffected . . . .

Another provision in the lease prohibited Younkers from seeking to avoid its obligations under the lease. Section 5.1(c) stated that "[l]essee covenants and agrees that it will remain obligated under this lease in accordance with its terms, and that Lessee will not take any action to terminate, rescind, or avoid this lease . . . ."

¶ 3. In 1994, the Mall acquired the Green Bay property and the lease from UTFMW for cash and assumption of debt. Subsequently, in August 2001, the City commenced discussions with Saks (successor to Younkers' interest in the property) and the Mall about

---

[2] UTFMW is not a party to this appeal.

a possible friendly condemnation of the property. The City and Saks detailed their plans for the condemnation in a written agreement. In the agreement, the City agreed to indemnify Saks against any claims arising from the condemnation including those made by the Mall. When no agreement on a friendly condemnation could be reached, the City made a jurisdictional offer on October 10, 2003, and filed the award of compensation on November 26, 2003, that condemned not only the property but the lease as well.

¶ 4. Prior to the condemnation, the Mall filed a lawsuit against Saks contending breach of §§ 5.1(b) and 5.1(c) of the lease. The Mall argued that Saks improperly colluded with the City in the condemnation in violation of the lease. The complaint also sought costs and attorney fees the Mall incurred in connection with the condemnation, under § 6.2(a) of the lease. The Mall and Saks filed cross-motions for summary judgment; the City, which agreed to indemnify Saks in the condemnation arrangement, also filed a summary judgment motion as an intervenor on Saks' behalf. On December 20, 2004, the circuit court granted Saks' and the City's summary judgment motions, ruling that condemnation of the lease "trumped" the Mall's contract claim. Accordingly, the court denied the Mall's summary judgment motion.

## STANDARD OF REVIEW

¶ 5. We review summary judgment without deference, using the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the

moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08.[3] We first ask if the complaint states a claim and then look at the answer to determine if it raises a material issue of fact or law. *See Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). If the complaint and answer are sufficient, we turn to the moving party's affidavits to determine if they support a prima facie case for summary judgment. *See id.* at 232–33. If a prima facie case for summary judgment is found, we ask whether the opposing party's affidavits present disputed material facts that entitle the opposing party to a trial. *See id.* at 233.

## DISCUSSION

■

¶ 6. The fact pattern before us is novel. After the City was unable to negotiate the terms of a friendly condemnation with the Mall, it proceeded with a condemnation under Wis. Stat. § 32.05. Uniquely, the City condemned not only the property but also the lease, and the Mall attempted to pursue a breach of contract action under the condemned lease. Generally, when a leased property is condemned the lease will terminate in the absence of an agreement to the contrary. *Maxey v. Redevelopment Authority of Racine*, 94 Wis. 2d 375, 405, 288 N.W.2d 794 (1980). However, we are unable to identify, and the parties fail to provide, a case citation in any jurisdiction involving the condemnation of property and also the lessor's rights under a lease.

¶ 7. The Mall does not challenge the City's right to condemn the property or the lease, and therefore, we

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

do not address this issue. However, the Mall argues the condemnation of the lease does not preclude it from seeking breach of contract damages in circuit court, particularly because it began its suit for breach of contract prior to the condemnation. It contends that Saks breached the lease by colluding with the City in the condemnation and by failing to pay the Mall the amount Saks owed under the lease.

¶ 8. For support of its argument that the condemnation does not preclude a breach of contract action in circuit court, the Mall relies on *Van Asten v. DOT*, 214 Wis. 2d 135, 571 N.W.2d 420 (Ct. App. 1997), and multiple federal and foreign state appellate cases. In *Van Asten*, we concluded that a condemnation clause in a lease that directed allocation of a condemnation award was controlling post-condemnation. *Id.* at 142–43. However, *Van Asten* and the other cases the Mall cites do not involve a condemnation award that compensated for both the property and the lease. *See id.* Here, the City's award of compensation stated that the award was payment for both the property and the Mall's interest in the lease.

¶ 9. Our problem with the Mall's argument is that it fails to acknowledge the operation of eminent domain law. In pertinent part, the applicable statute states "[w]hen service of the award has been completed, and after payment of the award . . . title in fee simple to the property . . . or the lesser right in property acquired by the award shall vest in the condemnor . . . ." Wis. Stat. § 32.05(7)(c). Therefore, after the City paid the award of compensation, title to the property and interest in the lease passed to the City pursuant to the statute. Consequently, the City replaced the Mall as the lessor. *See id.* Thus, the Mall may not pursue a breach of

469

contract action, even an action that it began prior to the condemnation, under a lease in which it no longer has any interest.

¶ 10. The Mall further contends that the circuit court reformed the contract in favor of Saks or at best ignored its express terms. The Mall cites several Wisconsin cases, including *Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin*, 95 Wis. 111, 69 N.W. 354 (1896), and *Bay Breeze Condo. Ass'n v. Norco Windows*, 2002 WI App 205, 257 Wis. 2d 511, 651 N.W.2d 738, expressing the generally accepted principle that courts should uphold the terms of a contract formed by arms-length parties. Here, however, the trial court has not reformed the contract; rather, it simply acknowledged the City's condemnation of the property and the lease. The City's condemnation, pursuant to Wis. Stat. § 32.05(7)(c), ended the Mall's interest, not a reformation of the lease by the trial court. *See* Wis. Stat. § 32.05(7)(c).

¶ 11. The Mall next argues that contract damages differ from the compensation paid by the condemnation award. Although the theory of recovery may differ, the record demonstrates that the Mall would be seeking a remedy for the same items in a breach of contract action as provided for in the condemnation award. At the deposition of Russell Jeter, owner and managing member of the Mall, Jeter was asked what damages the Mall sought from Saks due to Saks' alleged breach of contract. In pertinent part, the following exchange occurred:

> Q. . . . One of the components of your monetary damages is the rent you would have collected from Saks between December 1, 2003 and the end of the Lease term, correct?"
>
> A. Yes.

470

. . . .

Q. Are there any other components of your monetary damages that you are claiming, other than the rent that you've already talked about?

A. In 2014 we would have the fee ownership of a 280,000– square-foot building, which we no longer will have.

. . . .

Q. So you've talked about two things so far, Mr. Jeter. Just to remind you, you've talked about the missing rent, and you've talked about the value of the property at the end of the Lease term as to components of your damages; correct?

A. Um-hmm.

Q. Are there any others [elements of damages]?

A. Not that I'm aware of . . . other than the claim we've made which isn't complete for reimbursement of expenses and legal fees that are contained within the Lease.

Statements by the Mall's counsel at the summary judgment hearing confirm that the Mall would seek payments for future rents, the value of the property and costs associated with the condemnation. Further, the Mall provides nothing that demonstrates the damages sought in an action for breach are not the same as the compensation in the condemnation award. The condemnation award covered compensation to the Mall for future rents under the lease and title to the property, leaving only the issue of compensation for costs associated with the condemnation.

¶ 12. The Mall contends, however, that it was not compensated sufficiently by the condemnation award. Specifically, the Mall argues that the compensation paid

in the award failed to consider Saks' alleged default. Section 7.1(g) of the lease provided a specific formula to determine damages in the event of default. The Mall argues that the amount paid in the award did not consider a possible default, and it should be allowed the opportunity to prove default in circuit court. If the Mall is able to demonstrate that Saks defaulted, it contends the § 7.1(g) formula would require payment of a greater amount than that in the award of compensation.[4] We are not persuaded this contention is compelling because WIS. STAT. §§ 32.05(9) and 32.05(11) provide a "complete and exclusive" procedure to appeal from the condemnation award. *DOT v. Peterson*, 226 Wis. 2d 623, 627, 594 N.W.2d 765 (1999) (citation omitted). The Mall may bring an action challenging the amount of the award that will be heard by a county condemnation commission, § 32.05(9), or the circuit court, § 32.05(11). These statutes represent the proper avenue for the Mall to contest the amount in the condemnation award, not a breach of contract action. For the above reasons, we reject the Mall's argument that condemnation of the lease does not preclude it from seeking breach of contract damages in circuit court.

¶ 13. Since the Mall must appeal the award of compensation through the procedures in WIS. STAT. §§ 32.05(9) or 32.05(11), the condemnation commission

---

[4] Specifically, upon Saks' default, § 7.1(g) states that the Mall is entitled to receive "any amount equal to the excess, if any," of: all rent and other expenses which would be payable over the remaining lease term, discounted to present value at five percent per year, over the then fair rental value of the property. In the award of compensation, the City allegedly used a greater discount rate, approximately fifteen percent. The Mall contends the difference between the five and fifteen percent rates amounts to approximately $3.8 million.

or the circuit court must consider the terms of the lease and Saks' alleged default when conducting its inquiry into the sufficiency of the award of compensation. Failing to do so would permit a party, through an invited or collusive condemnation by a municipality, to avoid its obligations set forth in a contract. If the Mall proves in the appeal of the award of compensation that Saks defaulted, it is entitled to recover pursuant to the formula in § 7.1(g) of the lease. Of course, the amount of compensation already paid by the City to the Mall should be credited against any adjustment to the award of compensation.

¶ 14. Finally, we reject the Mall's argument, via similar reasoning, that it may pursue costs through contract in circuit court. Pursuant to the terms of the lease, the Mall contends that Saks owes the Mall costs and attorneys fees associated with the condemnation. Again, operation of WIS. STAT. § 32.05(7)(c) has taken the Mall's interest in the lease and transferred it to the City, and therefore the Mall may not pursue these costs through a breach of contract action. These costs should be considered in the amount of the condemnation award, and certainly the Mall may appeal the amount in the condemnation award pursuant to §§ 32.05(9) and 32.05(11).

¶ 15. In sum, we affirm the trial court's summary judgment in favor of Saks and the City. The City's condemnation of the lease extinguished the Mall's interest in the lease; the Mall may not sustain a breach of contract claim under a condemned contract. The Mall is free to pursue an adjustment to the award of compensation through the process set forth in WIS. STAT. §§ 32.05(9) and 32.05(11). Similarly, the Mall may pur-

473

sue costs and attorney fees associated with the condemnation through an adjustment of the award of compensation.

*By the Court.*—Judgment affirmed.