Mark J. MUEHLENBEIN and Dawn Muehlenbein, Plaintiffs-Appellants,†

v.

WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Respondent,

Mary Ann KOCIAN and Allstate Insurance Company, Defendants.

Court of Appeals

*No. 92-1855. Submitted on briefs January 15, 1993.—Decided March 10, 1993.*

(Also reported in 499 N.W.2d 233.)

† Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Anthony J. Utschig* of *Bollenbeck, Rowland & Utschig, S.C.* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Rollin E. Krafft* of *Law Offices of James J. Pauly* of West Bend.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. Mark J. and Dawn Muehlenbein appeal from an order granting summary judgment to West Bend Mutual Insurance Company. The trial court determined as a matter of law that West Bend was not liable for an underinsured motorist payment under its commercial umbrella policy. The issue is whether an endorsement to this insurance policy expanded the scope of the policy, when the body of the policy was clear and unambiguous and did not mention the coverage excluded by the endorsement. We hold that such an endorsement clarifies but does not expand the scope of the insurance policy. We therefore affirm the trial court.

The relevant facts are brief. Mark was seriously injured while driving a vehicle owned by his employer. The vehicle was insured under a commercial automobile insurance policy and an umbrella policy issued by West Bend. Mark received the policy limit of $50,000 for underinsured motorists under the automobile policy. Mark also received the policy limits of $100,000 from Allstate Insurance Company, which insured the car that hit him. The Muehlenbeins then attempted to claim additional underinsured motorist coverage under West Bend's umbrella policy.

The umbrella policy contains an endorsement labeled "Uninsured/Underinsured Motorist Coverage Exclusion." The endorsement reads, "We do not cover any claim or obligation imposed by an Uninsured or Underinsured Motorists law, or which is covered by the Uninsured or Underinsured Motorist coverage part of

262

any insurance policy covering you as an insured person." Uninsured or underinsured motorist coverage is not mentioned anywhere else in the umbrella policy. The commercial automobile policy, however, contains a detailed endorsement regarding uninsured motorist insurance.

West Bend moved for summary judgment, claiming that the umbrella policy endorsement clearly excludes payment for uninsured or underinsured motorists. The trial court granted partial summary judgment to West Bend. The court stated:

> As to whether the commercial umbrella policy provides underinsured motorist coverage, I conclude it does not, because the policy is for the purpose only of providing indemnity to the insured for obligations to pay which result from <u>liability</u> stemming from certain specified acts or instances. The policy does not contain any insuring agreement to provide underinsured motorist coverage. The purpose of the policy is to provide coverage for liability only, and the sole mention of underinsured motorist coverage in the policy is in an endorsement which clearly and unambiguously states that no such coverage exists. . .. Any reasonable insured would understand that the endorsement contained in the policy excluded coverage rather than providing it. [Emphasis in original.]

The Muehlenbeins now appeal. All other issues have been resolved by stipulation of the parties.

We will affirm a summary judgment if the record contains no genuine issue of material fact, entitling the moving party to judgment as a matter of law. *St. John's Home v. Continental Casualty Co.*, 147 Wis. 2d 764, 781-82, 434 N.W.2d 112, 119 (Ct. App. 1988). Our review is

*de novo,* without deference to the trial court. *Id.* at 782, 434 N.W.2d at 119.

The interpretation of words or clauses in an insurance contract is a question of law. *Dipasquale v. American Family Ins. Co.,* 168 Wis. 2d 75, 78-79, 483 N.W.2d 231, 233 (Ct. App. 1992). Insurance contracts are controlled by the same rules of construction as are other contracts; the goal is to ascertain the intentions of the parties. *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989). If the language of the contract is unambiguous, then we apply its terms without engaging in construction. *Dipasquale,* 168 Wis. 2d at 79, 483 N.W.2d at 233.

The Muehlenbeins argue that the language of the uninsured/underinsured motorist exclusion is ambiguous. Therefore, the exclusion endorsement must be harmonized with the rest of the policy. They assert that "the language of this endorsement clearly seems to state that underinsured motorist coverage is excluded under the commercial umbrella policy only to the extent that the insured is covered by the uninsured or underinsured motorist coverage part of any other policy covering the insured." Unless the endorsement is interpreted to provide excess coverage, the Muehlenbeins argue that the clause becomes meaningless.

In response, West Bend observes that the exclusion endorsement clearly and unambiguously precludes uninsured and underinsured motorist coverage. West Bend also asserts, "in light of the clear absence of underinsured motorist coverage in the insuring agreement, the exclusion endorsement really is not legally necessary to preclude underinsured motorist recovery." West Bend states that the Muehlenbeins are "attempt[ing] to con-

jure up an ambiguity and thus create coverage where none exists." It points out that although policy language is to be construed against the insurer, such construction should not be strained construction. *See Bankert v. Threshermen's Mut. Ins. Co.,* 105 Wis. 2d 438, 444, 313 N.W.2d 854, 857 (Ct. App. 1981), *aff'd,* 110 Wis. 2d 469, 329 N.W.2d 150 (1983).

We conclude that, rather than creating an ambiguity, the endorsement at issue in this case actually eliminates a potential ambiguity in the body of the umbrella policy. We determine this by reading the language of the policy and the endorsement as it would be read by a reasonable person in the position of the insured. *See Bertler v. Employers Ins.,* 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978). We give the words their common and ordinary meaning. *Id.* at 18, 271 N.W.2d at 605. We may look to dictionary definitions when determining the plain meaning of words in an insurance contract. *Holsum Foods Div. of Harvest States Coops. v. Home Ins. Co.,* 162 Wis. 2d 563, 569, 469 N.W.2d 918, 921 (Ct. App. 1991). We must also take into account the kind of insurance afforded by the policy when determining the meaning of its provisions. *See Bulen v. West Bend Mut. Ins. Co.,* 125 Wis. 2d 259, 264-65, 371 N.W.2d 392, 394 (Ct. App. 1985); *see also* R. LONG, THE LAW OF LIABILITY INSURANCE § 1.01[1] at 1-2, 1-3 (1992).

An endorsement is "a provision added to an insurance contract altering its scope or application that takes precedence over printed portions of the policy in conflict therewith." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 749 (unabr. 1976). An exclusion is a clause that *subtracts* from coverage and puts a reasonable person on

notice that coverage will be limited. *Bulen*, 125 Wis. 2d at 263, 371 N.W.2d at 394.

Thus, West Bend's exclusion endorsement is a clause that alters the terms of the umbrella policy by subtracting from the coverage available in the body of the policy. The Muehlenbeins argue that the lack of mention of uninsured or underinsured motorist coverage in the umbrella policy creates an ambiguity with respect to the exclusion. They claim that coverage cannot be subtracted from if it does not exist in the first instance. They ask us to imply uninsured and underinsured motorist coverage into the umbrella policy to resolve the claimed ambiguity. This reading, they suggest, is consistent with the policy of construing ambiguities in an insurance policy against the insurer. *See Bertler*, 86 Wis. 2d at 17, 271 N.W.2d at 605.

A reading of West Bend's umbrella policy as a whole does not support the Muehlenbeins' argument. We first consider the kind of coverage afforded by the policy. The umbrella policy is a *liability* policy. It clearly states:

> **I. Coverage:** The company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums *which the Insured shall be obligated to pay by reason of the liability*
>
> (a) imposed upon the Insured by law, or
>
> (b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured while acting in his capacity as such . . .. [Emphasis added.]

The policy does not reimburse the insured for his or her own loss. Instead, "it protects the insured against dam-

ages which he may be liable to pay to other persons by virtue of his own actions." R. LONG, THE LAW OF LIABIL-ITY INSURANCE § 1.01[1] at 1-3. Damage caused by an uninsured or underinsured motorist is not damage for which Muehlenbein's employer Servicemaster is liable by virtue of Muehlenbein's actions. Based solely on the kind of insurance afforded by the umbrella policy, a reasonable person could not believe that the policy covers damage caused by uninsured or underinsured motorists.

Second, the umbrella policy requires the insured to carry certain underlying insurance.[1] In this case, West Bend required Servicemaster to carry comprehensive automobile liability insurance with a $500,000 combined single limit. In Wisconsin, every automobile liability insurance policy must contain coverage for damage caused by uninsured motorists. *See* sec. 632.32(4)(a)1, Stats.[2] Servicemaster purchased a business automobile

---

[1] The policy states in relevant part:

**Maintenance of Underlying Insurances.** It is a condition of this policy that the underlying insurances as set out in Item 5 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of occurrences taking place during the period of this policy. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall only be liable to the same extent as it would have been had the Named Insured complied with the said condition.

[2] Section 632.32, Stats., states in relevant part:

(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

policy from West Bend which provides coverage for damage cause by uninsured and underinsured motorists.

The potential ambiguity in the umbrella policy arises when the underlying policies are considered in conjunction with the umbrella policy's excess clause. The umbrella policy states:

> **Other Insurance.** If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

Because the umbrella policy requires automobile liability insurance, which in turn must include uninsured motorist coverage, an insured might potentially argue that the excess clause applies to uninsured motorist coverage.

Additionally, West Bend issued Servicemaster's underlying automobile insurance policy. It is reasonable to assume that West Bend was aware of the policy's terms, which included underinsured motorist coverage. Therefore, West Bend no doubt believed that an enterprising insured might try to assert coverage where none existed by linking the umbrella policy's excess clause to underinsured motorist coverage.

West Bend eliminated these uncertainties surrounding uninsured and underinsured motorist coverage by

---

(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

issuing the exclusion endorsement at issue in this case. The endorsement clearly and unambiguously excludes coverage for any claim that is covered under the uninsured or underinsured motorist provision of any policy covering the insured. We hold that there is no proscription against an insurer using an endorsement to protect itself from potential arguments about what is covered.

This brings us to the Muehlenbeins' argument concerning the term "covered." They ask us to interpret the exclusion to allow for excess coverage by implying that a claim is not "covered" if the policy limits are insufficient to provide complete compensation.

We reject this interpretation. The word "covered" means "included in the group with respect to which a particular contract or agreement is in force." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 525. A claim is "covered" under an uninsured or underinsured motorist provision if the damage is caused by an uninsured or underinsured motorist. Whether the policy limits are sufficient to fully indemnify the insured does not determine whether a claim is covered. Our interpretation of the endorsement and the umbrella policy gives effect to all of the policy provisions, eliminates ambiguities, and is consistent with the type of coverage afforded by liability policies. The Muehlenbeins' interpretation would force West Bend to assume risks for which it has not been paid and did not contemplate. *See Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 365, 312 N.W.2d 129, 131 (1981), *overruled on other grounds, Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985). We therefore affirm.

*By the Court.*—Order affirmed.