BANK ONE, MILWAUKEE, NA, Plaintiff,

v.

BREAKERS DEVELOPMENT, INC., Morgan-Wightman Supply Company, Charles A. Rice, Mulkey Rawson Electric, Inc., and The Rafal Corporation, Defendants,

DIMENSIONAL CONSTRUCTION, INC., Defendant-Appellant,

Tim KONICEK, Intervening Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Intervening Defendant-Respondent.

Court of Appeals

*No. 95–3223. Submitted on briefs December 3, 1996.—Decided January 8, 1997.*

(Also reported in 559 N.W.2d 911.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey Leavell* and *Gregory Boe* of *Jeffrey Leavell, S.C.* of Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David G. Peterson* of *Peterson, Johnson & Murray, S.C.,* of Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. Dimensional Construction, Inc., is defending a slander of title action. This appeal concerns whether its insurer, American Family Mutual Insurance Company, owes coverage under a commercial general liability policy. Dimensional argues that the policy applies because it covers "slander" against a "person's or organization's goods,

products or services." Alternatively, Dimensional argues that the policy applies because it provides liability coverage for "property damage." However, since a reasonable insured would not believe that the terms "goods" or "products" were meant to include real estate titles, we reject Dimensional's initial argument. Moreover, because a reasonable insured would not associate property damage with economic loss resulting from the slandering of title, we reject Dimensional's alternative argument. We affirm the circuit court's order awarding summary judgment to American Family.[1]

We begin with a brief description of the action giving rise to this coverage dispute between Dimensional and American Family. Dimensional was involved with a condominium project in Caledonia. The project was scheduled to be built in several phases. Dimensional began work on Phase III, but stopped work when it was not paid.

The whole project subsequently went into foreclosure and Dimensional acquired the lender's rights to Phase III. But while Dimensional was preparing the property for sale, it found what it believed to be an error in the legal description. The face of the document indicates that the Phase II condominium owners also own the Phase III land. As Dimensional became involved in the effort to clear title,

---

[1] American Family asserted other reasons why the policy does not apply, including claims that Dimensional's activity regarding the title did not constitute an "occurrence" and that the term "slander" does not pertain to "slander of title." Although the circuit court analyzed these other issues and ruled in American Family's favor, we conclude that the two issues addressed above are the narrowest grounds on which to dispose of this case.

the condominium owners counterclaimed alleging that Dimensional slandered their title to the Phase III property.

Dimensional subsequently sought coverage from American Family for the slander of title counterclaim. American Family responded by moving for summary judgment on grounds that its policy did not provide coverage. The circuit court granted the motion. It found that a title to real property is neither "goods, products or services" as American Family's policy requires to qualify for coverage owing to slander. The circuit court further found that damages arising from slander of title are "pecuniary" and hence are not encompassed by American Family's policy which, in the relevant part, applies only to instances involving "property damage."

We now address Dimensional's contention that the circuit court erred in awarding summary judgment. We owe no deference to the circuit court's findings since the decision to award summary judgment and the interpretation of an insurance contract are matters of law. *See Benjamin v. Dohm*, 189 Wis. 2d 352, 358-59, 525 N.W.2d 371, 373 (Ct. App. 1994).

Our objective when interpreting the provisions of an insurance policy is to ascertain the intent of the parties. *See Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 264, 499 N.W.2d 233, 234-35 (Ct. App. 1993). We give the terms of the policy their common and ordinary meaning and gauge the effect that these terms would have on a reasonable person in the insured's position. *See Holsum Foods v. Home Ins. Co.*, 162 Wis. 2d 563, 568-69, 469 N.W.2d 918, 920 (Ct. App. 1991). We will now apply these maxims to American Family's policy and determine if a reasonable insured

standing in Dimensional's shoes would believe that the policy provided coverage for this slander of title action.

Dimensional initially points to the personal and advertising injury liability coverage. This section of the policy explains that American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' . . . ." Although the policy describes a variety of offenses that are "personal injuries," the section that Dimensional believes applies states:

> "Personal Injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> . . . .
>
> **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . .

Dimensional asserts that its prosecution of the action against the Phase II owners, generally alleging that they had imperfect title to Phase III, constitutes the slandering of the Phase II owners' "goods" or "products."

We conclude, however, that a reasonable person would not equate a title to real estate as a "good" or "product." To ascertain the common and ordinary meaning of a term, we look to dictionary definitions. *See Holsum Foods*, 162 Wis. 2d at 569, 469 N.W.2d at 921. We thus turn to Webster's, which provides the following definitions:

> **goods** *pl*: tangible movable personal property having intrinsic value usu. excluding money and

other choses in action but sometimes including all personal property and occas. including vessels and even industrial crops or emblements, buildings, or other things affixed to real estate but agreed to be severed: chattels, wares, merchandise, food products, chemical compounds, and agricultural products

. . . .

**product 2 a :** something produced by physical labor or intellectual effort : the result of work or thought

. . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 978, 1810 (1976). Based on these definitions, we believe that a reasonable person would interpret the policy to only cover claims involving slander of tangible property (such as a widget), or possibly intellectual property (such as the lyrics to a song). These expressions, however, stand in contrast to Webster's definition of "title" as "something that constitutes a legally just cause of exclusive possession." *Id.* at 2400. A reasonable insured would thus associate the policy's use of the terms "goods" or "products" to mean that the policy applied to things that have value in and of themselves, as opposed to "titles," which only have value if they become officially recognized.

Moreover, we observe that although the term "title" is not defined in the policy, this word is used to describe the related coverage for advertising injuries. Here, coverage is not only provided if the insured slanders "goods, products or services" but also applies when the insured commits the offense of "infringement of copyright, *title* or slogan." (Emphasis added.) Indeed, at least one court assessing a comparably worded clause has suggested that it would provide coverage for a slander of title claim, so long as it stemmed from

235

advertising. *See Sentex Sys., Inc. v. Hartford Accident and Indem. Co.,* 882 F. Supp. 930, 944 (C.D. Cal. 1995), *aff'd,* 93 F.3d 578 (9th Cir. 1996). Therefore, the fact that this section of the American Family policy uses the term "title" to *supplement* the terms "goods" and "products" further confirms that this policy's personal injury coverage was not intended to encompass slander of title claims. *See Berg v. Schultz,* 190 Wis. 2d 170, 175, 526 N.W.2d 781, 783 (Ct. App. 1994) ("an insurance policy must be considered as a whole to give reasonable meaning to every provision").

Dimensional's alternative argument involves the policy's bodily injury and property damage liability coverage. This section likewise explains that American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . ." Here, Dimensional claims that the slander of title constitutes "property damage" under this policy. The policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence' that caused it.

Citing to the "b." definition, Dimensional argues that the prosecution of the underlying action has hindered the Phase II owners' "use" of the Phase III property because "[i]nherent to a claim for slander of title is the loss of use of the subject property." But Dimensional

236

offers no legal authority for this "inherent" proposition and we disagree with its reasoning.

As American Family correctly explains, no party has alleged that Dimensional's actions have caused the "loss of use" of any property. In the Phase II owners' complaint, they contend that Dimensional seeks an "adverse interest" in their property. They seek judgment declaring their ownership. In fact, consistent with *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902-03, 419 N.W.2d 241, 244 (1988), the Phase II owners additionally demand monetary and punitive damages.

We thus reject Dimensional's argument that the Phase II owners' slander of title claim really concerns their perceived "loss of full use, quiet enjoyment and control over Phase III." The Phase II owners' claim is not for ejectment or nuisance which could inherently involve a claim that Dimensional caused the "loss of use" of property without actual physical injury. Dimensional's alternative argument also fails.

*By the Court.*—Order affirmed.