Brent J. STUBBE, Plaintiff-Appellant,

v.

GUIDANT MUTUAL INSURANCE COMPANY, Guidant Insurance Group, formerly known as Preferred Risk Mutual Insurance Company/Preferred Risk Group, Defendant-Respondent.†

Court of Appeals

*No. 01–2509. Submitted on briefs March 14, 2002.—Decided July 25, 2002.*

2002 WI App 203

(Also reported in 651 N.W.2d 318.)

† Petition to denied 12-10-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael Riley* of *Atterbury & Riley, S.C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard G. Niess* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.* of Madison.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. In the course of his employment, Brent Stubbe was injured in an automobile accident that was caused by an underinsured driver. Stubbe sought underinsured motorist benefits from his personal insurer, Guidant Mutual Insurance Company (Guidant), under both his automobile policy and his personal umbrella policy. An arbitration panel determined that Stubbe's accident-related damages were $436,332, with the parties reserving coverage issues. The underinsured motorist paid $50,000, worker's compensation paid $33,939.37 and Guidant paid $166,060.63 under Stubbe's automobile policy, but Guidant contested coverage under Stubbe's personal umbrella policy. When Stubbe sued for the balance of the arbitration award, Guidant raised its coverage defenses and counterclaimed, alleging that its initial payment to Stubbe erroneously included future medical expenses that it should not have paid. The circuit court granted summary judgment to Guidant on all issues. We conclude that Stubbe's umbrella policy is ambiguous and therefore, we construe it in favor of the insured to provide underinsured motorist protection for damages

in excess of the automobile policy's limit. We further conclude that Stubbe's automobile policy is ambiguous in regard to its treatment of future medical expenses, and therefore, Stubbe is entitled to retain any payment for future medical expenses already paid by Guidant. Accordingly, we reverse the judgment of the circuit court and direct it to enter judgment in Stubbe's favor on remand in the amount of $186,332, the balance of the arbitration award that remains unpaid.

## BACKGROUND

¶ 2. On June 9, 1997, Stubbe sustained severe personal injuries in an automobile accident caused by the negligence of Terry Thielmann. Thielmann carried an automobile insurance policy with a $50,000 liability limit, and Stubbe settled his claim against Thielmann and Thielmann's insurer for $50,000. Stubbe then sought additional damages from his own insurer, Guidant. Stubbe had two policies with Guidant relevant to this appeal: (1) a "Personal Car Policy," which provides $250,000 of underinsured motorist protection for claims involving bodily injury; and (2) a $1,000,000 "Personal Excess Liability Policy," or "umbrella" policy.

¶ 3. Pursuant to the requirements of the automobile policy, Stubbe and Guidant arbitrated the amount of damages, reserving coverage issues. The arbitration panel found total damages of $436,332, comprised of past medical expenses ($26,104); future medical expenses ($22,500); past lost earnings ($6,364); future lost earnings ($6,364); and general damages ($375,000).

¶ 4. Guidant remitted $166,060.63 to Stubbe, asserting that the payment satisfied its obligations. Guidant calculated this amount by off-setting from the automobile policy's $250,000 underinsured motorist

limit the $50,000 paid by Thielmann's insurer and the $33,939.37 paid by worker's compensation. Guidant contended that the umbrella policy provided no coverage for injuries caused by an underinsured motorist.

¶ 5. Stubbe sued Guidant to obtain additional payments, and Guidant counterclaimed for $22,500, asserting that its $166,060.63 payment to Stubbe erroneously included the amount the arbitration panel awarded for future medical expenses, which were subject to an exclusion and a reducing clause for medical expenses paid or payable as worker's compensation benefits. The parties agreed to a stipulated statement of facts and filed cross-motions for summary judgment. The circuit court decided all issues in favor of Guidant. Stubbe appeals.

## DISCUSSION

**Standard of Review.**

¶ 6. We review a circuit court's decision to grant summary judgment *de novo,* using the same standard applied by the circuit court. *Guenther v. City of Onalaska,* 223 Wis. 2d 206, 210, 588 N.W.2d 375, 376 (Ct. App. 1998). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's

affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 7. The primary issues on appeal involve policy defenses which require us to construe the insurance policies. The construction and interpretation of a written insurance policy is a question of law, which we review without deference to the decision of the circuit court. *Guenther*, 223 Wis. 2d at 210, 588 N.W.2d at 377.

**Policy Defenses.**

¶ 8. ˙ When construing an insurance policy, we first look to the language of the written agreement. *See Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). We construe the language used in the policy from the perspective of a reasonable insured, giving the words used their common and ordinary meanings. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 25, 233 Wis. 2d 314, 607 N.W.2d 276. If the policy language is clear on its face, we will simply apply the policy terms. *Id.* at ¶ 24. However, if the policy language is susceptible to more than one reasonable construction, it is ambiguous. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598–99 (1990). Ambiguities are resolved in favor of the insured. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728, 731 (1997). In addition, our interpretation of ambiguous language should advance the insured's reasonable expectations of coverage. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916.

### 1. Umbrella policy.

¶ 9. Guidant's view of the umbrella policy focuses almost exclusively on the policy's statement of coverage, which provides:

> We will pay the **ultimate net loss**[1] that any **covered person** becomes legally obligated to pay because of **personal injury** or **property damage** to which the insurance applies occurring during the policy period. We will pay only that part of the **ultimate net loss** which is in excess of the applicable **underlying limit** or **retained limit**.

(Footnote added.) Guidant argues that this language, including its defined terms, unambiguously shows that the exclusive purpose of the policy is to provide excess liability coverage for third-party claims brought against the insured; therefore, there is no coverage for first-party claims. In particular, Guidant emphasizes that Stubbe is a "covered person" under the policy and that he is not "legally obligated to pay" the damages awarded by the arbitration panel. Rather, he is entitled *to receive* those damages. Stubbe asserts that the policy must be read as a whole and further contends that other policy provisions affect the scope of coverage.

---

[1] The policy defines "ultimate net loss" as the sum of:

a. all sums which any **covered person** becomes legally obligated to pay for personal injury and property damage; and

b. all reasonable expenses of the investigation, settlement and defense of any claim or suit seeking damages.

The following expenses are not included in **ultimate net loss**:

a. Expenses with respect to claims or suits to which an underlying policy applies.

b. Expenses insured under Part B, Defense of Suits Not Covered by Other Insurance.

¶ 10. We agree that the policy must be read as a whole. *See D'Angelo v. Cornell Paperboard Prods. Co.*, 59 Wis. 2d 46, 50–51, 207 N.W.2d 846, 848–49 (1973) ("[T]he contract should be construed whenever possible so that . . . none of the language [is] discarded as superfluous or meaningless."). Additionally, we conclude that three prominent references to underinsured motorist protection appearing in the policy create an ambiguity in the insuring agreement.

¶ 11. The first time that Stubbe's umbrella policy refers to underinsured motorist protection is on the declarations page, which provides a table titled "SCHEDULE OF UNDERLYING INSURANCE LIMITS."[2] The schedule of underlying limits expressly lists "AUTOMOBILE LIABILITY," and five subheadings appear under that heading. The schedule indicates that a subheading is "Included only if marked by an X." "Underinsured Motorist" is clearly marked with an "X" as "included."

¶ 12. Although the importance of the schedule of underlying limits is not immediately apparent from the declarations page itself, the insured is told in a section of the policy titled "MAINTENANCE OF UNDERLYING INSURANCE" that:

> You must maintain in full effect the insurance afforded by each policy described in the Declarations. This does not apply to any reduction in limits of those

---

[2] The policy expressly defines "underlying limit" to mean "the total of applicable limits of insurance of the underlying policies described in the declarations and amounts of any other underlying insurance collectible by you."

policies caused by payment of claims in accordance with their terms, if such reduction occurs during the period of this policy.

If you fail to comply with this provision, we will be liable only to the extent that we would have been liable if the underlying policies had been maintained in force.

It is reasonable to read the schedule of underlying limits (which lists underinsured motorist coverage as "included") and the policy's requirement that the insured "maintain in full effect the insurance afforded by each policy described in the Declarations" to indicate that underinsured motorist protection is available as part of the umbrella policy. In particular, we conclude that a reasonable insured would believe that if underinsured motorist coverage were not available under the umbrella policy, the insured would not be required to maintain the underinsured motorist portion of their automobile policy "in full effect."[3]

¶ 13. The two remaining references to underinsured motorist protection appearing in the umbrella policy appear in an exclusion and a related endorsement. Generally, an exclusion is a clause in an insur-

---

[3] Guidant suggests that the purpose of showing "underinsured motorist" as an "included" type of "underlying insurance" on the declarations page of the umbrella policy is simply to summarize the scope of Stubbe's separate personal automobile policy. That is, the declarations page shows that underinsured motorist coverage is "included" in the *automobile policy,* and the subheadings in the schedule of underlying limits are not intended to say anything about the *umbrella policy's* scope of coverage. Even assuming that Guidant's argument reflects a reasonable reading of the declarations page, the argument does not erase the ambiguity that we conclude is created by the policy as a whole.

411

ance policy that subtracts from coverage and puts a reasonable insured on notice that coverage will be limited. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263, 371 N.W.2d 392, 394 (Ct. App. 1985). An endorsement is "a provision added to an insurance contract altering its scope or application that takes precedence over printed portions of the policy in conflict therewith." *Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 265, 499 N.W.2d 233, 235 (Ct. App. 1993) (citation omitted).

¶ 14. The umbrella policy's "UNINSURED OR UNDERINSURED MOTORISTS" exclusion states that Guidant does not provide insurance for "[a]ny loss for which you or a passenger in your car may have a legal right to recover from an owner or driver of an uninsured or underinsured auto because of an accident involving that auto." At first blush, the underinsured motorists exclusion would appear to support Guidant's argument that there is no first-party coverage under the umbrella policy. However the policy also contains an endorsement informing the insured that the underinsured motorists exclusion "is deleted in its entirety."

¶ 15. Stubbe argues that when the policy is read as a whole, the endorsement gives rise to a reasonable expectation of coverage for underinsured motorist claims. We agree. An insured may reasonably expect that when an insurance company deletes limiting language in the policy, the purported limitations no longer apply. Here, it would be reasonable for Stubbe to conclude that because there are other provisions dealing with underinsured motorist protection in the umbrella policy, the exclusion of coverage for underinsured motorist claims no longer applies and therefore, there is

coverage for such claims to the extent that the claims exceed the liability limits of the underlying policy.[4]

¶ 16. Additionally, we conclude that these prominent references to underinsured motorist protection—in a policy that the insurer claims has nothing to do with such claims—serve to distinguish this case from *Muehlenbein*, which was relied on by Guidant. Like Stubbe, the injured plaintiff in *Muehlenbein* was involved in an accident with an underinsured driver and sought additional underinsured motorist coverage under an umbrella policy because his damages exceeded the liability limits of the underlying automobile policy. *Muehlenbein*, 175 Wis. 2d at 262, 499 N.W.2d at 234. We concluded that a "reading of [the insurer's] umbrella policy as a whole does not support [the plaintiffs'] argument." *Id.* at 266, 499 N.W.2d at 235. First,

---

[4] Guidant offers an alternative reading of the exclusion and the endorsement. According to Guidant, the purpose of the exclusion was to emphasize that the policy's scope of coverage reaches only third-party liability claims. Deleting the exclusion, Guidant argues, had no real effect on the policy because the exclusion itself was essentially superfluous. Apparently, the insurer simply decided that the clarifying language found in the exclusion was no longer useful or necessary. We have previously held that there is no proscription against using an exclusion to clarify potential ambiguities in the insuring agreement. *See Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 268–69, 499 N.W.2d 233, 237 (Ct. App. 1993). And, once again, we are willing to assume that Guidant's interpretation of the exclusion and the endorsement is reasonable. However, because we also conclude that in combination with the other policy provisions addressing underinsured motorist protection a reasonable expectation of coverage could arise from the otherwise unexplained decision to delete the exclusion, Guidant has succeeded only in showing that the policy, read as a whole, is ambiguous.

we noted that the policy's statement of coverage in *Muehlenbein* gave no indication to the insured that the policy covered anything other than third-party liability claims. *Id.* at 266–67, 499 N.W.2d at 236. Second, we noted that the umbrella policy's lone reference to underinsured motorist protection—an endorsement that excluded coverage for any claim covered under the underinsured motorist provision of any policy covering the insured—clearly and unambiguously eliminated any potential ambiguity regarding underinsured motorist coverage. *Id.* at 267–69, 499 N.W.2d at 236–37. In contrast, the very provisions that we conclude give rise to an ambiguity in Stubbe's policy (the declarations page and the endorsement *deleting* an exclusion for underinsured motorist coverage) were absent from the policy at issue in *Muehlenbein*.

¶ 17. Because we conclude that the umbrella policy issued to Stubbe is ambiguous in regard to coverage for underinsured motorist claims and that Stubbe has a reasonable expectation of coverage for this claim, we resolve the ambiguity in the umbrella policy against Guidant. Accordingly, to the extent that there are amounts that would have been paid under the underinsured motorist provision in Stubbe's automobile policy but for that policy's monetary limits, they are covered by the umbrella policy.

### 2. The automobile policy exclusions and reducing clause.

¶ 18. Stubbe contends that the circuit court erred in granting summary judgment to Guidant on its counterclaim for $22,500 in "future medical expenses" that Guidant claims to have erroneously included in its $166,060.63 payment under the automobile policy.

Stubbe contends that the automobile policy language is ambiguous in regard to reducing the policy limits by the estimated amount of future medical expenses and therefore, the ambiguity should be construed in favor of the insured.[5] If the policy language is ambiguous in regard to exclusions or reducing clauses, it will be construed in favor of the insured. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536, 514 N.W.2d 1, 6 (1994) (exclusions from coverage are to be construed narrowly against the insurer). We agree the policy is ambiguous and construe.it against Guidant.

¶ 19. The stipulated facts establish that the arbitration panel awarded $22,500 for "future medical expenses," that the accident occurred in the course of Stubbe's employment and that Stubbe has received worker's compensation benefits for accident-related medical expenses in the past. The underinsured motorist provisions of the automobile policy state that Guidant "will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under . . . [w]orker's compensation law." Similarly, a reducing clause states that the limit of liability "shall

___

[5] Stubbe also argues that Guidant abandoned its right to challenge the policy's coverage of the future medical expenses by voluntarily remitting payment for those damages. He characterizes the payment of the damages as a "partial settlement." Because the record does not disclose the terms under which Guidant tendered its $166,060.63 payment to Stubbe, because there is some evidence that the parties reserved *all rights* to challenge the policy's scope of coverage and because Stubbe has provided no citation to legal authority for his claim that Guidant is bound by its initial calculation of the amount owed, we decline to address this argument.

be reduced by all sums . . . [p]aid or payable because of the 'bodily injury' under . . . [w]orker's compensation law."[6]

¶ 20. Stubbe asserts that the phrases "entitled to receive payment" and "sums . . . payable" under worker's compensation law are ambiguous with respect to an insured's future medical expenses. He contends that a reasonable insured would interpret the phrases to refer only to sums for accident-related medical expenses that have been paid or that are currently due and owing from an employer under the worker's compensation statutes. On the other hand, Guidant contends that the phrases reach all reasonable accident-related medical expenses, past and future, that may be reimbursed by the employer. According to Guidant, the fact that Stubbe has received worker's compensation coverage for his past accident-related medical expenses is sufficient to show that his employer will also pay for his future accident-related medical expenses. Both interpretations are reasonable.

¶ 21. The worker's compensation statutes define the scope of the employer's liability for an employee-claimant's medical expenses. WISCONSIN STAT. § 102.03 sets forth several conditions that trigger employer

---

[6] The language that Guidant used to define the scope of the reducing clause related to worker's compensation benefits parallels the language used in WIS. STAT. § 632.32(5)(i) (1997–98), which authorizes the use of such reducing clauses in conjunction with uninsured and underinsured motorist insurance. However, we interpret the language of the contract, not the language of the statute. *See Fletcher v. Aetna Cas. & Sur. Co.,* 165 Wis. 2d 350, 357, 477 N.W.2d 90, 92 (Ct. App. 1991).

In addition, all references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

liability under ch. 102. Stubbe raises no issue concerning the § 102.03 requirements, and we conclude that the fact that Stubbe has received worker's compensation benefits for his past accident-related medical expenses is sufficient to support at least a *prima facie* showing that the statutory conditions precedent to a worker's compensation claim have been satisfied.

¶ 22. However, Stubbe contends that the worker's compensation statutes do not require employers to make lump sum payments of estimated future medical expenses to an employee. That is, even when the injured employee's need for future medical care can be expressed to a degree of medical certainty, the employer does not stand in the shoes of a third-party tortfeasor in terms of liability for the reasonable value of expected future medical care, but instead, the employer pays for reasonable medical expenses as they are incurred. *See* WIS. STAT. § 102.42(1); *Lisney v. LIRC*, 171 Wis. 2d 499, 507, 493 N.W.2d 14, 16–17 (1992).[7] Additionally, he claims that the amount the employer (or its carrier) actually pays for medical services may be affected by contractual agreements and, therefore, may differ from a before-the-fact estimate of future medical expenses.

¶ 23. We agree that Wisconsin's worker's compensation laws create a system whereby (at least in the absence of a negotiated compromise) the employer or the employer's insurance carrier pays for reasonable and necessary medical expenses as those expenses are incurred and that those expenses cannot be determined

---

[7] Although *Lisney v. LIRC*, 171 Wis. 2d 499, 493 N.W.2d 14 (1992) addressed an earlier version of WIS. STAT. § 102.42(1), there have been no material changes to that section in the intervening years.

with complete accuracy before they are incurred. Furthermore, under Guidant's view of the policy, if the insured is injured during the course of his or her employment and was eligible for worker's compensation benefits, the insured takes on a substantially different risk with respect to estimated future medical expenses than would be true if the insured were not eligible for worker's compensation benefits. That is, under Guidant's proposed interpretation of the automobile policy, an insured with Stubbe's automobile policy who is injured on the job potentially bears a risk that future medical expenses will be *overestimated* and thereby reduce the policy limits for which actual payment is made. For example, if the reducing clause is applied as Guidant requests us to do, such an insured loses potential coverage for other damages to the extent that the future medical expenses actually paid as worker's compensation turn out to be less than the amount estimated by the arbitrator.[8] If, on the other hand, the same insured is injured in an accident off the job, the insured's potential risk is that estimated future medical expenses will be *underestimated*—which is essentially the same risk that an injured insured would have in a direct action against a tortfeasor. And, so long as there are other damages from the accident that reach the policy limit, the insured who is injured off the job will

---

[8] For example, if an insured with an automobile policy providing $100,000 of underinsured coverage for bodily injury is injured on the job and the estimated accident-related future medical expenses are $100,000, the insurer will pay $0 under Guidant's interpretation of the reducing clause. However, if the actual future medical expenses paid by the employer turn out to be only $50,000, then the insured has effectively lost $50,000 in coverage, at least so long as there were $50,000 or more in additional damages and no additional set-offs.

receive a payment equal to the policy limit even if future medical expenses are underestimated.

¶ 24. Because we conclude that as applied to an award of future medical expenses the policy language is ambiguous and that a reasonable insured would interpret the phrases "entitled to receive" and "sums payable" to refer only to amounts due and owing from an employer for expenses already incurred, we reverse the circuit court's decision with respect to Guidant's counterclaim. Therefore, Stubbe is entitled to retain any payment for future medical expenses.

**Undeveloped argument.**

¶ 25. Stubbe's briefs appear to suggest that because the umbrella policy contains no reducing clause relating to payments previously made and because his total claimed damages do not approach the $1 million liability limit of the umbrella policy, any reducing clause or "no-duplication" clause found in the automobile policy is not dispositive of the damages he is entitled to receive. To the extent Stubbe is asserting that the absence of a reducing clause in the umbrella policy means that he is entitled to recover (1) the $50,000 he received from Thielmann's insurer or (2) the $33,939.37 he received in net worker's compensation benefits,[9] we conclude that his argument is not sufficiently developed, and we decline to further address the issue. *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 637, 460 N.W.2d 787, 793 (Ct. App. 1990). For this reason, our calcula-

---

[9] Despite the suggestion of such a claim, we note that elsewhere in Stubbe's briefs he asserts that he is not challenging the validity of any applicable reducing clause. In addition, the stipulated facts indicate that Stubbe's position is that the arbitration panel's award *should be* reduced by the $50,000 paid by Thielmann's insurer.

tion of the $186,332 balance owed to Stubbe includes neither the $50,000 he received from Thielmann's insurer nor the $33,939.37 he received in worker's compensation benefits.

## CONCLUSION

¶ 26. We conclude that Stubbe's umbrella policy is ambiguous and that it should be construed in favor of the insured to provide underinsured motorist protection for damages in excess of the automobile policy's liability limit. We further conclude that the underlying automobile policy is ambiguous as applied to a claim for future medical expenses that may be covered under the worker's compensation laws and that Stubbe is entitled to retain any payment for future medical expenses already paid by Guidant. Accordingly, we reverse the judgment of the circuit court and direct the circuit court to enter judgment in Stubbe's favor on remand in the amount of $186,332.

*By the Court.*—Judgment reversed and cause remanded with directions.