Michelle B. Wadzinski, individually and as personal representative of the Estate of Steven M. Wadzinski, Plaintiff-Appellant,

v.

Auto-Owners Insurance Company, Defendant-Respondent.†

Court of Appeals

*No. 2009AP2752. Oral argument December 21, 2010. —Decided March 1, 2011.*

2011 WI App 47

(Also reported in 797 N.W.2d 910.)

† Petition for Review filed.

380

381

On behalf of the plaintiff-appellant, the cause was submitted on the briefs and oral argument of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arthur E. Kurtz* and *Daniel P. McAlvanah* of *Axley Brynelson, LLP*, Madison. There was oral argument by *Arthur E. Kurtz*.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Michelle Wadzinski appeals a summary judgment in favor of Auto-Owners Insurance Company. The circuit court determined that Wadzinski is not entitled to uninsured motorist (UM) benefits under an executive umbrella policy issued to her husband, Steven. We conclude the executive umbrella policy is ambiguous. We therefore construe the policy in Wadzinski's favor and hold that she is entitled to recover UM benefits from Auto-Owners. Accordingly, we reverse the judgment of the circuit court and direct it to enter judgment for Wadzinski.

## BACKGROUND

¶ 2. Steven was killed in a collision with an uninsured motorist in 2006. At the time of his death, he was insured by three Auto-Owners policies. The first two are straightforward with respect to UM coverage. A commercial auto policy provided liability coverage and $150,000 in UM coverage. A commercial umbrella policy also provided liability coverage, but excluded UM coverage. The third policy, an executive umbrella policy issued together with the commercial umbrella, is less clear.

¶ 3. The controversy in this case revolves around the executive umbrella policy. The executive umbrella provided liability coverage, but did not specifically exclude UM coverage. An endorsement to the policy stated, "We do not cover personal injury to you or a

384

relative. We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A." Schedule A, in turn, listed the underlying insurance requirements necessary to keep the executive umbrella policy in effect. One such requirement, an "Automobile Liability" policy, was undisputedly satisfied by the commercial auto policy containing UM coverage.

¶ 4. Wadzinski submitted a claim for UM benefits under both the commercial auto policy and the executive umbrella policy. Auto-Owners paid Wadzinski $150,000 in UM benefits under the commercial auto policy, but refused to make any payment under the executive umbrella.

¶ 5. Wadzinski then sued to recover UM benefits under the executive umbrella. Auto-Owners filed a motion for summary judgment, asserting that the executive umbrella "clearly and unambiguously excludes an additional claim for UM coverage." Wadzinski filed her own summary judgment motion, claiming the executive umbrella's endorsement was ambiguous and created a reasonable expectation of UM coverage.

¶ 6. The circuit court granted Auto-Owners' motion and denied Wadzinski's. It concluded the executive umbrella policy was unambiguous and covered only the insured's liability to others. Wadzinski appeals.

## DISCUSSION

██

¶ 7. We review a grant of summary judgment de novo, using the same standard and methodology applied by the circuit court. *Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶ 6, 257 Wis. 2d 401, 651 N.W.2d 318. Because the facts are undisputed, the sole issue is

whether the circuit court properly interpreted the insurance policy, which is a question of law. WIS. STAT. § 802.08(2) (2009–10); *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.

■

¶ 8. In answering that question, we are mindful of several rules of construction applicable to insurance policies. Our primary goal is to ascertain and carry out the intentions of the parties as expressed in the policy language. *Folkman*, 264 Wis. 2d 617, ¶ 12; *General Cas. Co. of Wis. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997). Therefore, we must first determine whether any policy language relating to the disputed coverage issue is ambiguous. *Folkman*, 264 Wis. 2d 617, ¶ 13. Policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Id.* (citing *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150). An unambiguous policy is enforced as written, but an ambiguous policy is construed in favor of the insured. *Id.* "Of primary importance is that the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Hills*, 209 Wis. 2d at 175.

¶ 9. At first blush, the executive umbrella policy appears to cover only the insured's liability to others. The policy grants coverage for the insured's personal liability, with the insurer agreeing to pay "the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages . . . ." In other words, the executive umbrella's grant of coverage plainly indicates the policy is meant to provide excess liability coverage for third-party claims brought against the insured, not first-party claims by the insured.

¶ 10. We customarily rely on a policy's initial grant of coverage when gauging the reasonable expectations of the insured. *See Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 265, 499 N.W.2d 233 (Ct. App. 1993). For example, the distinction between coverage for third-party and first-party claims was key to our conclusion in *Muehlenbein* that an umbrella liability policy unambiguously excluded underinsured coverage. *Id.* at 266–67. More recently, in *Etter v. State Farm Mutual Automobile Insurance Co.*, 2008 WI App 168, ¶ 14, 314 Wis. 2d 678, 761 N.W.2d 26, we rejected an insured's attempt to recover UM benefits under an umbrella liability policy, reasoning that "liability coverage and UM coverage are not the same. Liability insurance covers the insured's obligations to others, and UM coverage pays damages the insured is entitled to collect from others. Thus, there should be no confusion about what the policy meant when it stated it provided personal liability coverage."

¶ 11. However, even when the coverage grant is clear and unambiguous, its meaning may be muddled by other policy provisions. *See Folkman*, 264 Wis. 2d 617, ¶ 19. That type of ambiguity, known as contextual ambiguity, results from the insurer's imperfect preparation of the policy. *Id.*, ¶ 18. The insurer must make certain that its policy, taken as a whole, does not "befuddle[] the understanding and expectations of a reasonable insured." *Id.*, ¶ 20; *see also Stubbe*, 257 Wis. 2d 401, ¶ 10. We construe contextually ambiguous provisions in favor of the insured. *Folkman*, 264 Wis. 2d 617, ¶¶ 18–20.

¶ 12. We conclude Wadzinski's executive umbrella policy is contextually ambiguous. The policy endorse-

ment purporting to exclude coverage for personal injury to an insured can be reasonably read as providing UM coverage. The endorsement's heading adds to that ambiguity by using the phrase "following form." And finally, the executive umbrella policy lacks the type of unambiguous exclusion found in the commercial umbrella policy.

¶ 13. First, we must read the executive umbrella's initial grant of coverage in light of the policy's endorsement. The endorsement, which is one of several form provisions appearing at the end of the executive umbrella policy, purports to exclude coverage for personal injury to an insured:

**EXCLUSION OF PERSONAL INJURY TO INSUREDS FOLLOWING FORM**

We do not cover personal injury to you or a relative. We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A.

Our reading of the endorsement leads us to conclude that the initial grant of coverage is not as clear as it seems.

¶ 14. We begin with the language of the endorsement to determine its effect. *See Stubbe*, 257 Wis. 2d 401, ¶ 8. The first sentence simply states what is already obvious from the grant of coverage: "We do not cover personal injury to you or a relative." That sentence unambiguously informs the insured that the executive umbrella does not provide first-party coverage. But the second sentence appears to limit the effect of the first by stating that, under certain circumstances, the insurer *will* provide first-party coverage. We see at least two reasonable interpretations of the second sentence.

¶ 15. The first interpretation suggests that UM coverage is available. The second sentence provides that Auto-Owners will cover personal injury to an insured "to the extent that insurance is provided by an underlying policy listed in Schedule A." That sentence could mean that if an underlying policy covers the risk, so does the executive umbrella. Here, a required underlying policy provides UM coverage. The underlying insurance requirements are listed in Schedule A, which identifies the type of policy required and the minimum primary limits that the insured must maintain. An auto liability policy with a minimum limit of $500,000 is one of two listed underlying insurance requirements. The commercial auto policy that satisfies that requirement includes $150,000 in UM coverage. Therefore, a reasonable insured could read the endorsement and Schedule A as incorporating UM coverage into the executive umbrella.

¶ 16. The second interpretation would preclude UM coverage. The endorsement's second sentence could read as clarifying that the first sentence, which plainly excludes coverage for personal injury to an insured, has no effect on coverage available pursuant to an underlying policy. This interpretation appears to be a reasonable reading of the words, although we question why an insurer or anyone else would believe that an exclusion in an umbrella policy could have any effect on coverage in an underlying policy. In any event, the first interpretation, under which coverage is available, is at least as reasonable as the second. When presented with more than one reasonable interpretation, we must construe the policy in favor of the insured. *Folkman*, 264 Wis. 2d 617, ¶ 13.

¶ 17. Auto-Owners asserts that the endorsement and Schedule A refer to particular types of required

*coverage,* not types of *policies.* Under that interpretation, UM coverage is not available because Schedule A requires only auto liability coverage. We see two problems with that argument. First, the executive umbrella repeatedly speaks of required policies, not required coverage. Schedule A lists the "type of policy" required; it does not say "type of coverage." Other provisions in the executive umbrella also use the word "policy" to describe the underlying insurance requirements.[1] Second, and most important, the endorsement's second sentence appears to incorporate all insurance provided by an underlying policy, not specific types of underlying coverage. The endorsement states that Auto-Owners will cover an insured's personal injuries "to the extent that insurance is provided by an underlying policy listed in Schedule A." A reasonable insured could read that sentence as follows: If an underlying policy insures against the risk, so does the executive umbrella.

██ ██

¶ 18. Auto-Owners attempts to use rules of construction to combat the endorsement's ambiguity. Auto-Owners characterizes the endorsement's second sentence as an exception to the exclusion contained in the first sentence. It then asserts that any interpretation suggesting coverage is unreasonable because coverage "cannot be established by an exception to an exclusion." *See Jaderborg v. American Family Mut. Ins. Co.,* 2000

---

[1] At least two provisions other than Schedule A use the term "policy." The first, which mandates that the insured maintain underlying insurance, states, "You must keep each policy described in Schedule A in full effect during the term of this policy." The second is the endorsement's second sentence, which states that the insurer will cover personal injury to an insured "to the extent that insurance is provided by an underlying policy . . . ."

WI App 246, ¶ 17, 239 Wis. 2d 533, 620 N.W.2d 468 (citing ARNOLD P. ANDERSON, WISCONSIN INSURANCE LAW § 1.9B (4th ed. 1998)). It is true that an exception to an exclusion generally does not create coverage unless the claim is cognizable under the general grant of coverage. *Id.* However, that rule does not excuse an insurer from its obligation to clearly draft policy provisions. *See Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263–64, 371 N.W.2d 392 (Ct. App. 1985) (testing an exception in an exclusion for ambiguity). Reading the endorsement as a whole suggests a grant of coverage, not an exclusion. Consequently, we hold that the rule of construction we relied on in *Jaderborg* has no application here. We need not mechanically apply rules of construction to defeat the insured's reasonable expectations.

■

¶ 19. Despite the endorsement's ambiguity, Auto-Owners insists coverage is precluded under both *Muehlenbein* and *Etter*. In both cases, we rejected the insured's attempt to incorporate into an umbrella liability policy the UM or underinsured motorist (UIM) benefits of an underlying policy. *See Etter*, 314 Wis. 2d 678, ¶ 15; *Muehlenbein*, 175 Wis. 2d at 267–68. However, in neither case was our conclusion based on the specific endorsement at issue here. Questions of policy coverage must be judged individually in each case based on the language of the insurance agreement. *See Stubbe*, 257 Wis. 2d 401, ¶ 16 (distinguishing that policy from the policy in *Muehlenbein*); *cf. Varda v. Acuity*, 2005 WI App 167, ¶¶ 7, 9, 284 Wis. 2d 552, 702 N.W.2d 65 (to determine coverage under a particular policy, courts examine whether the facts of the insured's claim fit within the scope of the policy language). Depending on other language in the policies, even

similar provisions may be clear in one case and ambiguous in another. We therefore do not view *Muehlenbein* or *Etter* as controlling.

¶ 20. In *Muehlenbein*, the insureds attempted to recover UIM benefits under a commercial umbrella policy that provided liability coverage. We concluded the umbrella's underlying insurance requirements, when considered together with the umbrella's excess insurance clause, created a potential ambiguity as to whether UIM coverage was available. *Muehlenbein*, 175 Wis. 2d at 268. However, we held that the insurer "eliminated these uncertainties . . . by issuing . . . [an] endorsement [that] clearly and unambiguously excludes coverage" for any UM or UIM claim covered by another policy. *Id.* at 268–69. Thus, even though we found no coverage under the umbrella policy in *Muehlenbein*, our conclusion was based on the relationship between provisions that are not at issue in this case.

¶ 21. We also reject Auto-Owners' reliance on *Etter*. In that case, the wife and estate of a police officer killed by an uninsured driver sought UM benefits under a personal liability umbrella policy. *Etter*, 314 Wis. 2d 678, ¶¶ 2–4. The declarations page listed automobile liability as a required underlying policy, and an endorsement that defined automobile liability included the following sentence: "The policy must include [UM] Coverage if this coverage is shown on the Declarations." *Id.*, ¶ 9. The insureds interpreted that sentence to mean that the umbrella policy "must include UM coverage if *automobile liability* is shown on the declarations page." *Id.* We concluded otherwise, interpreting the sentence to mean that the insured under an umbrella policy containing UM coverage must maintain UM coverage in the underlying policy as well. *Id.*, ¶ 15. Our conclusion that the *Etter* policy unambiguously

excluded UM coverage therefore rested on language not included in Wadzinski's policy.

¶ 22. Admittedly, the policy in *Etter* also included a provision similar to the endorsement here, but that fact does not bind us to *Etter*'s conclusion. The *Etter* policy excluded coverage for personal injury to the insured, but an endorsement clarified that the exclusion did not apply to the insured "when covered under the 'Required Underlying Insurance Policies . . . .' " *Id.*, ¶ 10. The endorsement in Wadzinski's policy is more supportive of coverage because it is worded as an affirmative grant of coverage rather than an exception to an exclusion. Further, the *Etter* endorsement was not critical to our conclusion that the policy unambiguously foreclosed coverage. *See Id.*, ¶ 15. The Etters merely used the endorsement to buttress their ambiguity argument regarding the definition of automobile liability. *Id.*, ¶ 9. It was not necessary for us to consider whether the endorsement was ambiguous because it does not appear the insured made such a claim.

¶ 23. In any event, Wadzinski also offers case law to support her position. In *Stubbe,* we held that an insured was entitled to UIM benefits under an ambiguous umbrella liability policy. Although the grant of liability coverage was clear, we concluded that "three prominent references to underinsured motorist protection appearing in the policy create an ambiguity in the insuring agreement." *Stubbe*, 257 Wis. 2d 401, ¶¶ 9–10. *Stubbe* demonstrates that even a policy with a clear grant of coverage may be rendered ambiguous by other provisions.

¶ 24. We also deem the executive umbrella policy contextually ambiguous because the endorsement's perplexing heading adds to the ambiguity in its substantive

text. The endorsement is awkwardly labeled, "Exclusion of Personal Injury to Insureds Following Form." Although we give effect to the substance of a provision, and not the insurer's characterization of it, *see Welin v. American Fam. Mut. Ins. Co.*, 2006 WI 81, ¶ 55, 292 Wis. 2d 73, 717 N.W.2d 690, such characterizations are relevant in assessing the expectations of a reasonable insured.

¶ 25. The endorsement heading is potentially confusing because it is labeled an exclusion but also includes the phrase "following form." An exclusion is a clause that subtracts from coverage and puts a reasonable person on notice that coverage will be limited. *Muehlenbein*, 175 Wis. 2d at 265–66. Thus, an insured reading the word "exclusion" in the endorsement's heading will naturally believe the subsequent provision limits coverage in some way. By contrast, the phrase "following form" is an insurance term that suggests a grant of coverage. A "follow form" policy is "relatively brief," "incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy." *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶ 34 & n.7, 325 Wis. 2d 176, 784 N.W.2d 579 (citation omitted). An insured reading the phrase "following form" in the heading might reasonably expect coverage following the terms of an underlying policy.

¶ 26. The executive umbrella policy in this case is not a "follow form" policy per se, but that is of no consequence. Although the policy does not include a traditional "following form" provision incorporating the terms, definitions, exclusions and conditions of an underlying policy, *see id.*, ¶ 34, the phrase "following

form" in the endorsement's heading must mean something, *see Hammel v. Ziegler Fin. Corp.*, 113 Wis. 2d 73, 76, 334 N.W.2d 913 (Ct. App. 1983) (all provisions of a contract should be given reasonable meaning so as not to render any part of the contract surplusage). Auto-Owners had opportunities to explain that meaning in its brief and at oral argument, but failed to offer any explanation. Indeed, Auto-Owners' brief sidesteps the issue entirely by omitting the phrase "following form" from its quotation of the endorsement's heading. We conclude that a reasonable insured reading the phrase "following form" in the heading would believe that the subsequent provision in some way incorporates the coverage of the underlying policies. Although that might not be what Auto-Owners intended when it drafted the endorsement, "we do not construe insurance policies based on what we believe the intentions of the insurer may have been." *Johnson Controls*, 325 Wis. 2d 176, ¶ 42.

■

¶ 27. An insured reading the endorsement's heading will therefore have conflicting expectations regarding the following provision. The heading signals to the insured that the subsequent provision will simultaneously grant and limit coverage. In that situation, we must credit the expectations of the insured because the insurer, as drafter, is in the best position to avoid confusion. *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶ 19, 326 Wis. 2d 729, 786 N.W.2d 78; *see also Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 72, 255 Wis. 2d 61, 647 N.W.2d 223 (policy that sent several "false signals" to the insured deemed contextually ambiguous). Our supreme court has recently cautioned that an insurer using a follow form policy "may inadvertently bind itself to unintended obligations." *Johnson Controls*, 325

Wis. 2d 176, ¶ 42 n.9. Insurers must draft policies in a clear manner, and that includes avoiding headings that build up false expectations. *See Folkman*, 264 Wis. 2d 617, ¶ 31.

¶ 28. Finally, the commercial umbrella policy's exclusion for UM coverage enhances the endorsement's ambiguity. The commercial umbrella was issued at the same time and under the same policy number as the executive umbrella. The commercial umbrella states, without qualification, that the policy does not apply to "[l]iability for injury or damages to you or any other insured." A reasonable insured could view the presence of the exclusion in the commercial umbrella, and its corresponding absence in the executive umbrella, as confirming what the language of the endorsement suggests: that UM coverage is available under the executive umbrella as long as it is available in an underlying policy.

*By the Court.*—Judgment reversed and cause remanded.